RUDOLPH WURLITZER COMPANY, Appellee, v. J. L. RHEA, Appellant.

**Sales:** RESCISSION: NOTICE: EVIDENCE. The statement by the purchaser of property, upon presentation for payment of the chattel mortgage note given for the purchase price, made to a collector having no authority to represent the payee in any other way, that the purchaser would return the property if the seller would cancel and deliver the note and mortgage and repay the amount paid on the purchase price, was not an objection by the purchaser to the condition of the property binding upon the seller.

**Same:** RESCISSION: PLEADINGS. A pleading setting out a warranty in the sale of property and breach thereof, and offering to return the property to plaintiff in as good condition as when it was delivered to defendant, for the reason that it is unfit for the purpose for which it was sold, but failing to aver any prior offer to return or to rescind the contract, is insufficient as a plea of rescission for a breach of warranty, although perhaps sufficient as a plea of failure of consideration.

**Same:** FAILURE OF CONSIDERATION: EVIDENCE. Where the evidence conclusively shows that property purchased was not worthless but did have a substantial value, a plea of failure of consideration is not sustained. Such evidence is only available in support of a claim of rescission or for damages for breach of warranty or misrepresentation.

**Same:** BREACH OF WARRANTY: DAMAGES: EVIDENCE. Where the purchaser of property warranted to be in first class repair keeps the same for some time after discovering that it is not in good condition, and with the seller's consent selects his own time for sending the same away for repair, and it does not appear that the time consumed in making the repairs is unreasonable, he can not recover for loss of business during the time reasonably consumed in making the repairs, because deprived of the use of the property.

*Appeal from Cedar Rapids Superior Court.*—HON. JAMES H. ROTHROCK, Judge.

FRIDAY, MAY 13, 1910.

THIS is an action of foreclosure of a chattel mortgage. The mortgaged property consists of a harp, and the mortgage was given to secure the purchase price thereof. There was an affirmative answer and counterclaim setting up a breach of warranty in the sale of such harp. There was a judgment and decree for the plaintiff for the full amount claimed. Defendant appeals.—*Affirmed.*

*Barnes & Chamberlain,* for appellant.

*U. C. Blake* and *Redmond & Stewart,* for appellee.

EVANS, J.—The original transaction out of which this action has arisen was had in October, 1906. The plaintiff company was a dealer in musical instruments at Cincinnati, Ohio. The defendent was a musician engaged in orchestral work in and about Cedar Rapids, Iowa. The defendant wrote to the plaintiff requesting prices on orchestral harps. In response thereto, the plaintiff sent him a list of "secondhand" orchestral harps, with a quotation of prices on each one. The letter in which such list was inclosed contained the following representation: "These harps are all in first-class repair." In the quotation of prices the particular harp which was afterwards selected by the defendant was quoted at $800, with a discount of 33 1-3 percent. Replying to this letter, the defendant offered $500 for this particular harp, to be payable $100 C. O. D., and the balance in installments of $25 per month. This offer was accepted by the plaintiff, and the harp was shipped by express and received by the defendant and the notes and chattel mortgage in suit were executed at the time of the delivery. The first three installment notes were paid substantially according to their terms, but no other payment has ever been made. The

action is brought by plaintiff to recover the balance. The defendant's answer is in two counts. In the first count defendant sets up a warranty consisting of the representation above quoted from plaintiff's letter, and alleges a breach of such warranty in that the harp when received was not in first-class repair. It is averred therein that the harp "is worthless and of no account to the defendant," and "defendant hereby offers to return said harp to plaintiff in as good condition as it was when it was delivered to him for the reason that said harp is unfit for the purpose for which it was sold." The second count of the answer consists of a counterclaim. It embraces all the allegations of the first count, "and in addition thereto states that at the time he purchased the said harp from the plaintiff he was engaged in teaching music and conducting an orchestra at Cedar Rapids, Iowa; that at the time he purchased the harp from the plaintiff, and before he ascertained that it was entirely unfit for orchestral use, he entered into various contracts to furnish music at divers times and places; that by the failure of the plaintiff herein to furnish this defendant with a harp in first-class repair, and by reason of their negligence in repairing, and their failure to repair, said harp within a reasonable time, defendant was forced and did abandon his contracts to furnish music, as aforementioned, in all to his damage in the sum of $250." The prayer of the answer and counterclaim is that the defendant recover $425, being $250 damages and $175 paid on the purchase price.

It appears without dispute that within three days after receiving the harp the defendant wrote to plaintiff, complaining of the "action" of the harp. He also wrote that he had "gone over it thoroughly, and found it a beautiful toned instrument in good repair with the exception of the action." Replying to this complaint, the plaintiff suggested that defendant have the same repaired

if possible at Cedar Rapids, at the expense of plaintiff; otherwise that it be sent to the Chicago office of the plaintiff. Thereupon defendant wrote to plaintiff that he "had it fixed up temporarily, and as soon as my work gives me an opportunity I shall send it to your house at Chicago, as it is far from being satisfactory." The defendant used the harp in his work until about the middle of February. On February 11th, he wrote to the plaintiff that the harp "is getting so badly out of shape that it needs going over by expert repairers." The plaintiff suggested that the harp be sent to one Schimmeyer of Chicago for the purpose of repair. On February 19th, in pursuance of this suggestion, the defendant sent the harp to Schimmeyer. On May 3d, he received it back from Schimmeyer in apparently first-class repair. On May 4th, he wrote to the plaintiff company that "the harp is now in good condition such as it should have been when shipped to me from Cincinnati." In this letter, however, he claimed damages of $200 as being the amount lost by him during this "period of waiting," and "having no instrument to fill engagements."

The trial court made the following finding of facts:

(1) That at the time the defendant first received the harp in controversy from the plaintiff the same was not in first-class repair.

(2) That when the harp was received by the defendant after the same had been shipped by him to one Schimmeyer to be repaired the same was in first-class repair.

(3) That at the time of the trial the harp was not in first-class repair.

(4) That shortly after the harp was received from Schimmeyer the sharping fingers did not work properly. Some of the strings gave forth a buzzing sound, and the action was not good. That such condition continued to the time of the trial.

(5) That after the harp had been received from Schimmeyer the defendant, upon discovering that the sharping fingers did not work properly, that some of the

strings gave forth a buzzing sound, and that the action was not good, did not notify the plaintiff of those facts, but continued to use the harp without objection to its condition, and so continued to use the same for several months.

A decree was entered for the plaintiff disallowing all claim and counterclaim of the defendant.

I. The defendant makes no complaint of the first four paragraphs of the finding of facts. He claims, however, that the fifth finding of fact is contradictory to undisputed testimony, and he urges upon us that the trial court must have overlooked such testimony. The testimony so referred to by the defendant as it appears in the record is that the notes were sent for collection to the Cedar Rapids National Bank, and that they were presented for payment by the cashier of the bank, and that the defendant told the circumstances to the cashier, and said that he would "send the harp back to the Wurlitzer people if they would return the money and cancel the notes and mortgage." This is the only testimony relied on by defendant at this point. It is manifestly inadequate. The cashier of the bank had no authority from the plaintiff to represent it in any way except in the collection of the notes, nor did the cashier assume such authority. On the general merits of the case we would be slow to interfere with the findings of the trial court in the state of the record before us. It appears that the instrument in question was brought into court, and expert witnesses made experiments thereon in the presence of the court as illustrating the testimony. Another instrument also was brought in for the purpose of illustration and comparison. The trial court, therefore, had some advantage over us in the ascertainment of the facts of the case. Nor does the state of the record as presented to us raise any serious question in our minds as to the correctness of the trial court's findings.

1. SALES: rescission: notice: evidence.

II.   It is urged by appellant in argument that, even though the fifth finding of fact be sustained, the appellant defendant was nevertheless entitled to recover.   It is argued that the court was misled by this finding of fact into an erroneous view of the law, and that he assumed that notice of defect was essential to defendant's right of recovery for breach of warranty.   Assuming the correctness of defendant's position at this point as a general proposition, it is insufficient to carry him home.

2. SAME: recission: pleadings.

Turning to the first count of the answer for our first consideration, it is difficult to determine therefrom whether it is intended thereby to plead a rescission of the contract for a breach of warranty, or whether it is intended to plead a mere failure of consideration.   This count sets out the warranty and the breach thereof.   Its final averment is that "defendant hereby offers to return said harp to plaintiff in as good condition as it was when it was delivered to him, for the reason said harp is unfit for the purpose for which it was sold."   There is no averment that the defendant had made such offer prior to the filing of his answer.   Nor is there any averment that the defendant did at any time prior to the filing of his answer rescind, or offer to rescind, the contract.   We think, therefore, that this count is quite insufficient as a plea of rescission of the contract by reason of the alleged breach of warranty.   This count, however, does aver that the harp is worthless and of no account to the defendant.   This is perhaps sufficient in view of other allegations as a plea of failure of consideration.

Treating this count as sufficient plea of failure of consideration, we are confronted with the fact that the evidence fails to sustain it.   On the contrary, the testimony on the part of defendant shows conclusively that the harp was not worthless, but that it did have substantial value.   This

3. SAME: failure of consideration: evidence.

particular defense can not be sustained by a mere showing that the value was less than the consideration paid. Such a showing is available to the purchaser only in support of a claim of rescission or of a claim for damages based upon a breach of warranty or of false representations. Our conclusion, therefore, is that the first count of defendant's answer does not plead a rescission, and that its plea of failure of consideration is not sustained by the evidence.

III. In the second count of the answer, which is denominated a counterclaim, the defendant claims damages in the sum of $250, in the words which we have already quoted herein. The alleged warranty was that the harp was in "first-class repair." When the defendant discovered that the harp was not in such repair, he elected to call upon the plaintiff company to put it in such repair, to which the plaintiff company agreed. He also kept and used the harp for over three months before sending the same to Chicago, as proposed by the plaintiff company. He selected his own convenient time, with the consent of the plaintiff, for the purpose of sending back the harp for repair. He did send it to Schimmeyer. His letter to Schimmeyer requested that he take the necessary time "to do a perfect job." His claim for damages is based upon the alleged loss of business by reason of unreasonable delay in repair and returning the harp. Inasmuch as he voluntarily entered into the above arrangement, it is clear that he could not recover for alleged loss of business for the time reasonably consumed in making the repair. He offers no evidence to show what would have been a reasonable time, nor that the time actually consumed was unreasonable. The only testimony on that point is that of the witness Schimmeyer, who testified on behalf of the plaintiff, which tends to show that the time consumed was reasonably necessary; the nature of the work being such as to require it for drying and setting.

4. SAME: breach of warranty: damages: evidence.

On the question of damages, the evidence on behalf of defendant was directed principally to damages measured by the difference between the value of the harp in the condition in which it was and such value as it would have had if it had been in first-class repair. And this is the measure of damages principally urged upon our attention on this appeal. We see no way to grant this relief upon this record. Defendant's counterclaim is so framed as to specify the nature of the damages claimed, as we have already pointed out. There is the further consideration that the second finding of fact by the trial court was that the harp was in first-class repair when the defendant received it from Schimmeyer. This was a fulfillment of the warranty, and left no ground for damages, unless it be for unreasonable delay, as before indicated. Defendant has assumed in his argument here that the condition of the harp as received from Schimmeyer was a mere appearance of good repair, and was not such in fact because of the subsequent condition of the instrument. The finding of fact is against the defendant in that respect. If the harp was in first-class repair when the defendant received it from Schimmeyer, as found by the trial court, the plaintiff company was under no obligation under its warranty to maintain such repair. If the repair by Schimmeyer was a mere appearance or pretense, a different question would be presented. But there is no testimony to that effect, unless it be the mere fact that the harp afterwards became out of repair. How it became out of repair, and what care was exercised by the defendant himself, does not in any manner appear in the testimony.

We think it must be said, therefore, that the defendant has neither maintained his defense of failure of consideration nor his counterclaim for damages, and the decree of the trial court must be *affirmed.*