FIRST NATIONAL BANK OF SHENANDOAH, IOWA, Appellant, v. FLOYD COOK, Appellee.

**SALES:  Fraud—Rescission—Return of Property—Necessity for.** Failure of a vendee to return or to offer to return property received under a contract induced by false and fraudulent representations is fatal to a rescission of the contract, unless the vendee shows the property is worthless.

**SALES:  Delivery—What Constitutes—Intention of Parties.**  "Delivery" is an all-important question in those cases wherein the vendee of property of value, in defense of an action for the price, pleads (a) fraud, and (b) rescission, and plaintiff counters with a plea of (a) delivery of the property and (b) retention by vendee.  A delivery is any act, in keeping with the intention of the parties, by which the vendor loses and the vendee acquires control of the property.

PRINCIPLE APPLIED:  Defendant pleaded (a) that he had been induced to enter into the contract in question by fraud and (b) had rescinded by refusing to receive the property.  Plaintiff countered by pleading (a) that defendant did receive the property and (b) retained it.  There was evidence that after defendant had first refused to receive the property negotiations were had; that defendant was requested to go to the depot and get the property; that he said he was not able to go at that time; that the vendor offered at his own cost to store the property for plaintiff; that defendant agreed to this and the property was

so stored and defendant notified accordingly; that as a part of the controversy the vendor, at the request of defendant, gave defendant a statement of guaranty as to the property and extended payment one year. *Held* to demand the submission of the question of "delivery" to the jury.

TRIAL: Issues—Duty to Submit—Rule—Sales—Delivery. If there is evidence tending to sustain a material issue, such issue must be submitted to the jury.

PRINCIPLE APPLIED: (See No. 2.)

*Appeal from Page District Court.*—HON. THOMAS ARTHUR, Judge.

THURSDAY, JUNE 24, 1915.

ACTION on a written order for the purchase of goods. Defense that the goods were not as represented; that before receiving the goods the defendant discovered this fact and notified the seller that he rescinded the contract of purchase, and that he refused to receive the goods. Judgment for the defendant. Plaintiff appeals.—*Reversed.*

*Earl R. Ferguson* and *C. R. Barnes,* for appellant.

*Denver L. Wilson* and *Thos. W. Keenan,* for appellee.

GAYNOR, J.—Plaintiff's action is founded upon the following instrument, which was duly endorsed and assigned by the Veterinary Remedy Company to the plaintiff as security for money loaned, to wit:

"Original.      Post Office, Harding, So. Dak., May 7, 1900.

"I, F. C. Cook, do hereby purchase of the Veterinary Remedy Company the following described goods: 300 lbs. Lysol Cyclone Worm Powder, 8 cts. per pound; 1250 gallons Lysol Dip, 65 cts. per gallon. Lysol Dipping Tanks —— per tank. F. o. b. destination. Total amount $836.50. I further agree to pay for the same on or before Nov. 1, 1909, at Shenandoah, Iowa.

"J. R. Curran, Salesman.

"Floyd Cook (Name of Purchaser.)"

The defense interposed is:

First.   That prior to the execution of this instrument and as an inducement to the defendant to sign and execute it, the Veterinary Remedy Company, through its properly authorized agents, represented and stated to the defendant that the Lysol Dip, mentioned in the order, had been approved by the government at Washington and by the state of South Dakota for the treatment of cattle and sheep for scab, and would answer the requirements of state and federal inspectors in dipping sheep and cattle that had been exposed to or affected by scab, and would meet such requirements under the quarantine law, and that cattle dipped in said dip could be trailed, or moved in and out of the state, as freely as any other stock dipped in any other dip used in the state; that at the time of the making of said order, and for some time thereafter, the western half of South Dakota, including Belle Fourche and vicinity, was affected with a disease or plague called scabies; that stock in that locality ran and mixed together to a great extent upon open ranges; that there was a federal quarantine on sheep and cattle which was then being enforced by the state and by federal inspectors, and by reason thereof, and the regulations of the Department of Agriculture and the rules and regulations of the South Dakota sanitary board, which were also being enforced, owners of cattle were not permitted to drive, trail or transport live stock from one range to another, or into or out of quarantine territory, or across the state line, until they had been dipped in dip approved by the Bureau of Animal Industry at Washington, and its use permitted by the board; that the representations made by the Veterinary Remedy Company to the defendant aforesaid touching the dip named in the order were untrue, and were by the said company known to be untrue at the time they were made; that the defendant believed them to be true and was induced thereby to sign the order; that by reason of the existence and enforcement of the quarantine

rules, customs and regulations aforesaid, the dip could not be used in South Dakota, and was valueless for any purpose in the state of South Dakota; that shortly after making said order, the defendant discovered that said Lysol Dip had never been approved by the Department at Washington, or by the inspector, either state or federal, and that neither said dip nor its use would be recognized by said inspectors, or by the live stock sanitary board of South Dakota; that the defendant immediately informed and notified J. R. Curran, whose name appears upon said order, and later notified the members of the Veterinary Remedy Company that he would not receive or accept said material.

Second. After repeating the matters alleged in the first count, the defendant pleads that, upon discovering that said remedy had not been approved as aforesaid, and after having discovered the fraud practiced upon him, he immediately notified the Remedy Company of his intention to rescind said contract, and refused to receive or accept the dip, and that he never did receive or accept the same, but that the same had at all times been under the order and control of the Veterinary Remedy Company.

Third. After repeating the matters hereinbefore set out, the defendant alleges that the Veterinary Company warranted said dip to be such as it represented, and to have official recognition, as hereinbefore stated, and that it had been approved by the United States Department of Agriculture, and by the authorities of the state of South Dakota, and was accepted by stock inspectors for dipping both sheep and cattle for scab; that he gave the order relying upon said warranties; that the dip wholly failed to meet any of said warranties; that it never had been approved by any of said authorities; that, therefore, the dip was valueless to the defendant, and that defendant was damaged to the full amount of $836.50, the amount of the order; that because of said breach of warranty, the defendant refused to accept said dip,

and at once, on learning of the breach of said warranty, rescinded the order and has never received or accepted the medicines covered by said order.

The plaintiff for reply to the answer of the defendant pleads:

First. A general denial.

Second. That even if such representations were made as alleged by the defendant, the same were true at the time they were made.

Third. The plaintiff says that for the purpose only of this count they admit that the false and fraudulent statements were made as alleged by the answer, but pleads that the defendant is estopped to deny that he purchased the same unconditionally; that he waived any fraud or false representations made to him with reference thereto, because, after said representations had been made and the dip purchased, the Veterinary Remedy Company, through its agents, shipped the goods sold under the contract to the defendant at Belle Fourche, South Dakota, which was a railroad station at which the defendant received freight and merchandise; that thereafter the agents of said company visited the defendant and informed him that the goods had been shipped and that they had reached their destination; that the defendant made no complaint as to any fraudulent representations or warranties having been made as an inducement to purchase, although he had full knowledge of all that had been represented and said; that thereupon the defendant requested the Veterinary Remedy Company to store the goods for him at a certain place at Belle Fourche, and, in compliance therewith, the Veterinary Company did store the same for the defendant and delivered the same to him; that thereby the defendant waived any claim he might have because of any false representations, and is estopped to deny plaintiff's claim.

Fourth. The plaintiff pleads in reply that, conceding that the representations were made as claimed, and that they were

false, yet the defendant, after the purchase, and after he had

full knowledge of said representations, en-

1. SALES: fraud:
rescission: re-
turn of prop-
erty: neces-
sity for.

tered into an agreement of settlement with the Veterinary Company as to any and all disagreements between them with reference to said purchase, and especially waived all claims he might have had with reference to said goods, or with reference to any fraudulent representations, in consideration that the Veterinary Company deliver the goods to him at a certain place at Belle Fourche, and store the same for him; that the Veterinary Remedy Company thereupon, and in compliance with said compromise and settlement, and in consideration thereof, did deliver the goods and merchandise to the defendant at the place designated, and stored the same for him.

Fifth. The plaintiff says that after the goods had been sold and purchased by the defendant, and in pursuance thereof, the Veterinary Remedy Company delivered the same to the defendant at Belle Fourche; that the defendant received the goods and kept the same and they are the property of the defendant and still remain his property; that the same has never at any time been returned or tendered back to the Veterinary Company, but retained by the defendant as his property.

Such were the issues presented by the parties in the pleadings at the time the cause was submitted to the jury by the court. The court held the order divisible, and instructed the jury to return a verdict for the plaintiff for the worm powder, but submitted to the jury for their determination whether or not the defendant was shown to be liable for the Lysol Dip. The jury returned a verdict for the plaintiff for $30.25, the amount due for the worm powder, with interest, but denied plaintiff's right to recover for the dip, and judgment was rendered in favor of the plaintiff for $30.25, and all costs were taxed to the plaintiff. From this judgment, the plaintiff appeals.

The court, in submitting the case, told the jury that

the plaintiff was entitled to recover the full amount of the contract, unless the defense pleaded by the defendant, based upon false and fraudulent representations claimed to have been made by the Veterinary Company, is made out, and then stated correctly what the defendant was required to prove in order to establish this defense and defeat plaintiff's claim. This was practically the only defense submitted by the court to the jury. Then the court told the jury that the plaintiff in its reply pleaded in avoidance of such defense. First, a general denial; second, that the representations made as alleged were not untrue, but were in fact true. The court then said to the jury:

"Some matters are pleaded by both the plaintiff and the defendant which are not set forth in the issues herewith submitted to you for the reason that, in the judgment of the court, such matters have not sufficient support in the evidence or in the law."

The court thus practically withdrew from the consideration of the jury the claim of the plaintiff made in the fourth and fifth counts of its reply, in which it sought to avoid the effect of the defense if proven. The court, in substance, said to the jury that to make out his defense, the defendant must show the following facts: First, that the Veterinary Company made the representations charged to have been made; second, that these representations were false; third, that they were made to induce the defendant to purchase the dip; fourth, that the defendant believed them to be true, and was induced by them to purchase the dip, and said, "If the defendant has established the above matters, the defense is made out as to the dip; otherwise, not."

The court limited the plaintiff's reply to a denial that it made the representations, and to an affirmative allegation that if they were made, as stated, they were true at the time they were made.

The defendant pleaded affirmatively that the goods were never received or accepted by him. The plaintiff tendered an amendment to its petition, alleging affirmatively that the goods were delivered, received, accepted and retained by the defendant. This amendment was refused. Nowhere did the court indicate to the jury where the burden rested to show the truth of this allegation, that the goods were or were not delivered to the defendant. In view of the position taken by the defendant in his answer, this was an important inquiry, the truth of which went to the meat of the defense. The court nowhere told the jury what the effect would be upon the legal rights of the parties if it should appear that the Veterinary Company had delivered the goods to the defendant; that he had received and retained the same, and they were of some value. Nowhere did the court tell the jury that, if they found from the evidence that the Veterinary Company had delivered the goods to the defendant, that he had accepted and retained the same and that they were of some value, he could not rescind and thereby defeat recovery without a showing that he had returned or offered to return the goods so received. This issue was squarely tendered by the plaintiff in its reply. There was some evidence tending to support it. The court should have submitted it to the jury.

It is elementary that where one enters into a contract with another, based upon representations or warranties as to the character or nature of the thing to be delivered, and he subsequently discovers that the thing is not as warranted or represented, yet has some value, he must, if he desires to rescind, return or offer to return the thing received. He may, however, retain the thing and sue and recover the difference between the actual value of the thing received, under such circumstances, and what its value would have been if it had been as represented or warranted; or he may, if sued for the purchase price, counterclaim, and the measure of his recovery upon such counterclaim would be the difference between the value of the thing received and retained by him,

as it was at the time it was received, and in the condition in which it was received, and what it would have been worth had it been as represented or warranted.

It will be noticed by referring to the defendant's answer that he nowhere pleads that the dip was of no value. His plea is that it was of no value to him; was not salable in South Dakota; was valueless in South Dakota because of conditions existing there. There is no proof that this dip was of no value. The most that can be claimed for the proof is that it was not salable in South Dakota, by reason of existing conditions, and for the purposes for which the plaintiff bought it.

It would follow, therefore, that if this dip was of some value, and it had been delivered to and received by the defendant, he should have returned or offered to return it as a condition precedent to his right to rescind. It may have been of no value to the defendant. It may not have been salable in South Dakota, and yet to the Veterinary Company it may have been of its full contractual value. The jury were not permitted to pass upon this question under the instructions given by the court. Of course, if it had been of no value at all to anyone, no obligation would have rested on the purchaser to return it, or offer to return it.

To justify a rescission which would relieve from the obligation to pay for the thing purchased, it must be shown not only that the thing purchased was not as warranted or as represented, but that the party receiving the goods returned or offered to return them to the party from whom they were received, or that they were in fact of no value at all. We do not presume to pass upon the sufficiency of the evidence to sustain these allegations of the reply, but we do say that there was some evidence from which the jury might find that the goods were actually delivered to and received by the defendant; that they were of some value, and that the defendant had failed to return or offer to return the goods before

attempting a final rescission. On this point see *Wurlitzer Co. v. Rhea,* 147 Iowa 382; *Rose v. Eggers,* 148 Iowa 306.

Whether or not there is a delivery of goods, whether goods are delivered and accepted by a party, is often a question of the intention of the parties at the time. They may agree upon any method of delivery, either as to manner, time, or place of delivery. Delivery involves a parting with the control of the property to the one to whom the delivery is made, or the placing of the goods, with the consent and knowledge of the purchaser, in such a position that they are unconditionally at the disposal of the purchaser. On this point, see *Petroleum Products Co. v. Alton Tank Line,* 165 Iowa 398; *Hamilton v. Brewing Co.,* 129 Iowa 172; *Leggett & Meyer Tobacco Co. v. Collier et al.,* 89 Iowa 144. We think the court erred in not submitting to the jury these issues tendered by the plaintiff in its reply. There was some evidence to support them.

2. SALES: delivery: what constitutes: intention of parties.

It is the duty of the court to submit to the jury on its own motion the issues presented whenever there is evidence tending to sustain the same. It is not for the court to weigh the evidence and sit in judgment upon the credibility of the witnesses. The rule is: If there is evidence tending to sustain an issue material to the proper determination of the rights of the parties, under the issues made, the court must submit the issue to the jury for its determination; for they are the judges of the credibility of the witnesses and the weight to be given to their testimony. On this point, see *Faust v. Hosford,* 119 Iowa 97; *Overhouser v. American Cereal Co.,* 128 Iowa 580.

3. TRIAL: issues: duty to submit: rule: sales: delivery.

With the record showing a dispute in the evidence as to whether or not the dip was delivered to and accepted by the defendant, the court not only erred, but in its twelfth instruction emphasized its error in not submitting, as a question of fact, whether or not there was, in fact, a delivery and acceptance by the defendant.

In its twelfth instruction, the court practically told the jury that a rescission might be made without returning or offering to return the dip, even though it had some value. This twelfth instruction reads as follows:

"If it appears from the evidence that the defendant was induced through the false and fraudulent representations of the Veterinary Remedy Company, through its agent, J. R. Curran, to purchase the Lysol Dip, as before explained, this would justify the defendant in rescinding the contract of purchase of said Lysol Dip, and such rescission, under such circumstances, would defeat the plaintiff's recovery on the order in question, so far as the item of Lysol Dip is concerned, provided such rescission, if he did make a rescission, was made within a reasonable time after he discovered that the representations made to him, if they were made, were false, *by notifying the Veterinary Remedy Company, or its agent, J. R. Curran, that he would not receive the Lysol Dip,* and whether such rescission, if you find there was a rescission of the contract, was made within a reasonable time, is a question of fact for you to determine from the evidence bearing thereon."

The jury in this instruction were told that the defendant could rescind the contract by notifying the Veterinary Company that he would not receive the dip, and that this rescission would be effectual in defeating plaintiff's recovery. In this instruction, there was no limitation upon the right to rescind, if the dip was not found to be as represented, except that the notice of rescission must be given within a reasonable time.

The jury were nowhere told in the instruction that if the dip had been delivered to the defendant and was of some value, he could not rescind by simply giving notice of his purpose to rescind within a reasonable time; that something more would then be required to make a rescission effectual, to wit, that he must have returned or offered to return the thing received.

The court must have assumed that the dip had never been delivered to the defendant; that he had never received or accepted it; that it was still in the possession of the Veterinary Company. With this assumption, the instruction would be undoubtedly correct, but with the fact as to delivery being in dispute, there remained this further question to be determined by the jury as a condition precedent to the right to rescind.

Defendant claims that within two days after the giving of the order sued on, he notified the agent of the company, and subsequently the company, that he would not receive the dip; that he had discovered that the representations made were not true. If this were the whole record, and it appeared that he refused to receive the dip when it was shipped, such rescission would be a complete defense to plaintiff's right to recover. But it appears that after this attempted rescission, there subsequently were further negotiations between the parties, touching the matter of this contract, and further discussion touching the dip and the representations made, and that he was told that it had not passed government inspection, but was in process and would pass; that written samples had been submitted to the government; that he was notified that the dip was at Belle Fourche, and he was requested to come and receive it; that he said he was not able to go to Belle Fourche at that time; that he was busy, and some arrangement was made for the storing of the dip for him. At least, this is plaintiff's contention; that the company's agents told him that they would store it for him until such time as he could get off and go down and get the dip; that he assented to this; that they did store the dip. It is claimed by the plaintiff that this was done as an accommodation to the defendant, and that, as a further accommodation, they agreed to pay the storage at the place where it was agreed to be stored; that he was subsequently informed as to where it was stored.

It further appears that on the 9th day of May the defendant had a talk with Curran, the agent who took the contract, in which talk this dip was discussed. Defendant claimed it was not as represented. Curran claimed that it was as represented; that the defendant asked that he give him a statement as a guarantee of the dip he was to receive; that thereupon Curran wrote out a statement and delivered it to the defendant who, after having read it, retained it. The statement delivered was in the following words:

"Veterinary Remedy Company, Manufacturers of the Celebrated Lysol Dip, Greatest of all Disinfectants and Lice Killer.

"Shenandoah, Iowa, May 9, 1909.

"This is to say that the Veterinary Remedy Company of Shenandoah, Iowa, will extend Mr. F. C. Cook's obligation one year from November 1, 1909, should dip be on his hands at said date. Dip is to pass government approval.

"J. R. Curran.

"Regular dray or freight from depot to Cook's ranch to be allowed on all goods shipped to him."

Of course, there is a dispute between the witnesses as to this written instrument, as to why it was made and delivered to the defendant; but in this dispute, there is a controversy, and the jury's province was to settle this controversy. The theory of neither party can be accepted by the court as a correct interpretation of what actually happened between the parties at the time.

There are other complaints made by appellant of which we do not now take notice for the reason that the case must be reversed for the errors hereinbefore referred to. The matters of which complaint is made are of such a character that they are not likely to occur upon a re-trial of the cause. Some of them cannot occur upon a re-trial of the cause. Others are of such a character that they will not be controlling upon such trial.

For the errors pointed out, the case must be and is—
*Reversed*.

. DEEMER, C. J., LADD, PRESTON and SALINGER, JJ., concur.