THE SOUTHERN KANSAS RAILWAY COMPANY V. BEN-
JAMIN RICE.

1. PASSENGER — *Expulsion* — *Measure of Damages.* Where a passenger
is rightfully in a railroad car and in the possession of a ticket en-
titling him to ride on that trip and train, and is deporting himself
in a becoming and proper manner, and presents his ticket to the
conductor when called upon therefor, but is informed by the con-
ductor that his ticket will not be honored, because the time to ride
thereon has expired, and that he must either leave the train or pay
his fare, and not having any money, he does not pay the fare de-
manded, and thereupon the conductor takes hold of his coat-collar
and leads him out of the car to the platform of the station, and when
off the car a friend of his gives him money to pay the extra fare,
and the conductor accepts the fare and then permits him to ride to
his destination, *held,* that even if the conductor acted in good faith
and in the honest belief that the passenger had no right to ride upon
the ticket he presented, he is entitled to recover from the railroad
company the amount of the extra fare paid by him, with interest,
and also actual compensation for the injury and indignity to which
he was subjected. *Held further,* That if there was such a reckless in-
difference to the rights of the passenger as to establish gross negli-
gence amounting to wantonness on the part of the conductor, in
examining the ticket presented by the passenger and in ejecting
him from the car, he is also entitled to recover exemplary damages.

2. CONDUCTOR — *Abuse of Authority* — *Liability.* A conductor of a rail-
road company represents the company in the discharge of his func-
tions; and being in the line of his duty in collecting the fare, or
taking up tickets, the corporation is liable for any abuse of his au-
thority, whether of omission or commission.

*Error from Johnson District Court.*

ACTION brought by *Benjamin Rice* against *The Southern
Kansas Railway Company* on October 31, 1885, to recover
as damages the sum of one thousand dollars for being unlaw-
fully assaulted and ejected from a passenger car by the con-
ductor thereof, while returning from Kansas City, Missouri, to
Olathe, in this state, the plaintiff at the time having a ticket to
ride as a passenger in the car. Subsequently, the railway com-
pany filed an answer containing a general denial. Trial had
at the March Term, 1886. The jury returned a verdict for the

plaintiff, and assessed his damages at one hundred and seventeen dollars and forty-six cents; and also made the following special findings of fact:

Questions submitted by plaintiff:

"1. Did the conductor act willfully and in a grossly negligent manner in putting the plaintiff off of the train? _Ans.:_ He willfully put him off the train.

"2. Did the conductor act with a reckless disregard of the plaintiff's rights? A. Yes.

"3. Did the plaintiff state to the conductor that he had purchased his ticket the day before, and could the conductor have easily ascertained that fact from the passengers who were acquainted with plaintiff? A. In this case he could.

"4. How much do you allow plaintiff as exemplary damages? A. $71.75."

Questions submitted by defendant:

"1. How much do you allow plaintiff for pecuniary loss? A. 71 cents.

"2. Was plaintiff injured in person by the conductor? A. No.

"3. How much do you allow plaintiff for injury to his person? A. Nothing.

"4. Did plaintiff lose any time by reason of defendant's conductor refusing to honor his ticket, and if so, how much? A. No.

"5. How much do you allow plaintiff for loss of time? A. Nothing.

"6. How much do you allow plaintiff for inconvenience in going from his seat to the platform and back again? A. Nothing.

"7. Was plaintiff treated in an insulting or brutal manner by the conductor; and if so, state fully how? A. In an insulting manner.

"8. How much, if anything, do you allow plaintiff for injury to his feelings? A. $10.

"9. How much, if anything, do you allow plaintiff for expenses, attorneys' fees, or time in prosecuting this case? A. $35."

The defendant filed a motion to set aside the verdict of the jury and for a new trial, which was overruled. Subsequently, judgment was entered upon the verdict. The railway company excepted, and brings the case here.

*Geo. R. Peck, A. A. Hurd,* and *Robert Dunlap,* for plaintiff in error.

*John T. Little,* and *Samuel T. Seaton,* for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: On October 29, 1885, Benjamin Rice, a colored man, purchased of the ticket agent of the Southern Kansas Railway Company, at Olathe, in this state, for fifty cents, a limited railroad ticket to Kansas City, Missouri, and return, good for three days, the date of issue being stamped on the back. On that day he was carried as a passenger by the railway company upon one of its passenger trains from Olathe to Kansas City. The "going coupon" of the ticket was torn off and taken up by the conductor of the train. On the next day, October 30th, Rice, desiring to return to Olathe, boarded one of the passenger trains of the company, which left Kansas City about ten o'clock P. M., and when the conductor called upon him for his fare, presented the "return coupon" of the ticket, which he had purchased the day before. The conductor took it to the light, and after examining it, handed it back to Rice, saying it was not good, and informed him that he could not honor it. Rice insisted that the ticket was good, and said to the conductor that he had purchased the ticket the day before, and that he, the conductor, had carried him upon the ticket to Kansas City on that day. Another passenger also stated to the conductor at the time, that he had seen Rice purchase the ticket on the 29th. The conductor replied that he could not honor the ticket, and subsequently took hold of Rice's coat-collar and led him out of the car. Rice had no money to pay any extra fare; and when he was off the car, or about to get off, a friend gave him seventy-five cents, which he gave to the conductor, who returned him five cents, punched a receipt for his fare, and permitted him to ride to Olathe.

On the part of Rice, it is contended that the ticket he presented showed plainly on its back that it was stamped at Olathe

on the 29th of October; that he told the conductor that he did not have any money to pay any more fare; that he was quietly in his seat as a passenger when ordered by the conductor to leave the train ; that he did not make any forcible resistance to the orders of the conductor, but that the conductor took him out of the car and off upon the steps of the platform.

On the part of the railway company it is claimed that the ticket had been folded up and creased· at the date; that the conductor took it to the light and examined it carefully; that the date was obliterated; that the ticket looked so old and worn that the conductor believed it had expired; that he informed Rice that the ticket was not good and that he could not ride upon it, but would have to pay fare; that when the train reached Holliday the conductor inquired of Rice what he was going to do; that Rice then refused to pay fare or get off the train; that the conductor then took hold of Rice's coat-collar and led him to the platform of the station, or to the last step of the car; that then a friend told Rice to come back and he would give him money to pay his fare, and the conductor permitted Rice to take his seat and ride to his destination; that when Rice was informed that he would have to pay his fare or leave the car, it was his duty to do one or the other; that he should have paid his fare and relied upon his remedy to recover it back; that if he could not do this he should have quietly left the train and not provoked or made necessary an assault; that therefore he should have recovered only seventy-one cents, that amount being the sum assessed by the jury for his pecuniary loss. The railroad company asked instructions which tended to limit the amount of damages that Rice was entitled to recover to the exact fare paid by him, with interest thereon. The court refused to give these instructions, but directed the jury, among other things, as follows:

"I instruct you that if you find the plaintiff presented to the conductor for his passage a limited ticket, good only for three days from the date of its sale, and that the conductor,

from the mutilated and worn condition of the ticket, was unable to read the date on the ticket, and honestly believed that the ticket was an old one, and not good, and for this reason, and without any unnecessary force or indignity to the plaintiff, required him to pay his fare or get off, and did upon refusal and failure to pay fare, remove said plaintiff without any unnecessary force and without injury to his person, to the platform of the car, or to the platform or ground at a regular station, and then plaintiff paid his fare and continued his journey on the same train and without delay; then, if you find as a fact that the ticket presented by plaintiff was a good and valid ticket, and that the conductor had no right to collect this fare from the plaintiff, you must find a verdict for the plaintiff, and the measure of his damages would be the amount of fare paid by him, with interest at seven per cent. per annum from October 30, 1885, and actual compensation for the injury and outrage, if any, suffered by plaintiff from the alleged assault."

We perceive no error in this instruction. In actions for the recovery of damages for the wrongful expulsion of a

1. Passenger — expulsion — measure of damages.

passenger from a train, the passenger may recover for his time, inconvenience, the necessary expenses to which he is subjected; and if treated with violence, or in an insulting manner, for the injuries to his person and feelings. If the expulsion be malicious, or through negligence which is gross and wanton, then exemplary damages may be awarded.

"There is a special duty on the carrier to protect its passengers, not only against the violence and insults of strangers and co-passengers, but *a fortiori*, against the violence and insults of its own servants, and that for a breach of that duty he ought to be compelled to make the amplest reparation. The law wisely and justly holds him to a strict and rigorous accountability. We would not relax in the slightest degree this strict accountability. We know that upon it in no small degree depends the safety and comfort of passengers." (*M. K. & T. Rly. Co. v. Weaver*, 16 Kas. 456; *K. P. Rly. Co. v. Kessler*, 18 id. 523.)

We fully concede that no one has a right to resort to force to compel the performance of a contract made with him by another; and a passenger about to be wrongfully expelled

from a railroad train need not require force to be exerted to secure his rights, or increase his damages.    For any breach of contract or gross negligence on the part of the conductor or other employés of a railroad company, redress must be sought in the courts, rather than by the strong arm of the person who thinks himself about to be deprived of his rights.    A passenger should not be permitted to invite a wrong and then complain of it.    (*Hall v. H. & C. Rld. Co.*, 15 Fed. Rep. 57; *Townsend v. N. Y. C. Rld. Co.*, 56 N. Y. 301; *Bradshaw v. S. B. Rld. Co.*, 135 Mass. 409; *Railroad Co. v. Connell*, 112 Ill. 296; *Palace Car Co. v. Reed*, 75 id. 125; 3 Wood's Rly. Law, § 364.)    Of course, a party upon a train may resist when, under the circumstances, resistance is necessary for the protection of his life, or to prevent probable serious injury; nor can a party be lawfully ejected from a train while in motion so that his being put off would subject him to great peril. In this case, Rice made no unreasonable resistance.    He did not resort to force or violence; having a good ticket and being entitled to ride, he refused to pay fare or get off the train. The conductor had no difficulty in leading him off, and about all that Rice did was merely to assert his lawful right to ride upon the train.    Where a passenger with a clear right and a clean ticket is entitled to ride on that trip and train, and is wrongfully ejected without forcible resistance upon his part, the jury are and ought to be allowed great latitude in assessing damages.    They should award liberal damages in full compensation for the injuries received.    The quiet and peaceable behavior of a passenger is to his advantage, rather than to his detriment.

Complaint is also made of other instructions of the court, regarding the measure of damages.    Among other things, the court said to the jury that if "the assault was malicious and without cause or provocation, or was accompanied by acts of gross insult, outrage, or oppression, you may award the plaintiff exemplary or vindictive damages."    Also, "that in estimating damages they might take into consideration the indignity, insult and injury to plain-

2. Measure of exemplary damages.

tiff's feelings by being publicly expelled." Further, that if they found "there was on the part of the conductor either malice, gross negligence, or oppression, they would not be confined in fixing damages to the actual damages received, but were justified in giving exemplary damages." It is said that these instructions were misleading and erroneous, because there was no evidence whatever to show that the conductor acted with malice or gross negligence. Upon the evidence of Rice, corroborated by McCulloch, another passenger, who said that he saw Rice purchase the ticket on October 29, there was evidence before the jury upon which to found these instructions. (*Hufford v. Rld. Co.*, [Mich.] 31 N. W. Rep. 544.) The forcible expulsion of Rice from the car where he was rightfully seated, was such a wrong as is inevitably accompanied with more or less outrage and insult. There was no excuse for the act of expulsion, except the honest mistake or the gross negligence of the conductor. If that mistake was due to such reckless indifference to the rights of a passenger on the part of the conductor as established gross negligence, amounting to wantonness, and the jury so found, they might find exemplary damages. (*K. P. Rly. Co. v. Kessler*, supra; *L. L. & G. Rld. Co. v. Rice*, 10 Kas. 426.)

Whether the conductor was grossly negligent, amounting to wantonness, or actuated by malice, were matters before the jury for their determination upon the evidence. Under the authority of *Titus v. Corkins*, 21 Kas. 722, Rice was entitled to recover the expenses incurred by him in the litigation, if entitled to exemplary damages. (15 Fed. Rep. 95–97.)

The amount of the verdict in this case was only one hundred and seventeen dollars and forty-six cents; therefore the damages are not so excessive as to indicate passion or prejudice on the part of the jury.

The other matters submitted are immaterial.

The judgment of the district court will be affirmed.

All the Justices concurring.