THE KANSAS CITY, FORT SCOTT & MEMPHIS RAILROAD COMPANY v. JOHN T. LITTLE.

No. 12,977. (71 Pac. 820.)

SYLLABUS BY THE COURT.

1. RAILROADS—*Injury to Passenger—Representations of Employees.* A passenger going upon a railroad-train has a right to rely on the representations of a local ticket agent, and on those of the railroad company's agent in charge thereof, that such train will stop at a certain place to which he has purchased a ticket and desires to ride, and the company will be liable to such passenger in damages, if he be compelled to leave the train before arriving at his destination because, by the general rules of the company, unknown to the passenger, such train is not scheduled to stop at such station.

2. ——— *Exemplary Damages.* Exemplary or punitive damages may be awarded, where a wrong has in it the element of negligence which is gross or wanton or wilfully oppressive.

3. ——— *Humiliation and Disgrace.* An indignity need not be done to one in the presence of a number of people in order to entitle the person wronged to recover damages for the humiliation and disgrace suffered.

Error from Johnson district court; JOHN T. BURRIS, judge. Opinion filed March 7, 1903. Affirmed.

### STATEMENT.

DEFENDANT in error, desiring to go from Olathe to Hillsdale, a station about twenty miles south, on the railroad of plaintiff in error, inquired of the ticket agent in charge of the station at Olathe at what time he could obtain a train, and was told that there would be a freight-train leaving that point at 6 : 35 P. M. This was train No. 27.   Soon after six o'clock he went to the ticket office at Olathe, purchased his ticket, and, as a train pulled into the station, the agent said to Mr. Little : ''The train is now coming.'' He proceeded to board the caboose, and, as he did so, told the man in charge that he wanted to go to Hillsdale, and this man, who afterward turned out to be rear brakeman, said : ''That is all right ; this train takes the place of 27 to-night, and carries passengers.'' Thereupon Mr. Little took his seat in the caboose, and after the train had started the brakeman took up his ticket, as also that of another passenger who was his companion.   The train stopped at Ocheltree, the first station, and also at Springhill, the second station.   Upon arrival at Springhill, the conductor came into the car for the first time, and inquired of Mr. Little in a boisterous manner : ''What are you doing on this car?   You can't ride on this car ; this car does n't carry passengers.''   Upon being ordered off the car he obeyed.   This was about nine o'clock at night, at a point about one-fourth of a mile from the station, on a steep embankment.   After he had left the car and gone some distance, the brakeman came running after him and tendered back his ticket, which he refused to accept.   Upon the trial the jury returned a general verdict in behalf of the plaintiff for $225.58,

Railroad Co. v. Little.

and at the same time returned their special findings, which were as follows :

"SPECIAL QUESTIONS ASKED BY PLAINTIFF.

"1. Did plaintiff, about eleven A. M., October 6, 1900, call up the ticket agent, Ferguson, at the company's depot, and make inquiry about going to Hillsdale that evening, and was he informed that if he would call at the office about six o'clock P. M. he could go on a freight-train to Hillsdale? Ans. Yes.

"2. Did plaintiff go to the depot about six o'clock, and did the ticket agent sell him a ticket to ride on a freight-train to Hillsdale? A. Yes.

"3. Did the ticket agent, after he had sold the ticket to plaintiff, inform him that the train was then coming? A. Yes.

"4. What was the price of the ticket? A. Fifty-eight cents.

"5. Did a freight-train about 6 :35 arrive at the depot at Olathe? A. Yes.

"6. Did plaintiff inquire of an employee of the company who just got off the caboose if that freight-train would carry him to Hillsdale? A. Yes.

"7. Did the person inquired of say to plaintiff that this train takes the place of No. 27 and carries passengers, and that he could go to Hillsdale? A. Yes."

"26. When plaintiff approached the caboose, was there an employee of the company standing on the rear platform who afterward took up the plaintiff's ticket? A. Yes.

"27. Did plaintiff state to this person that he wanted to go to Hillsdale, and did such person then inform plaintiff that he could go, and that this train takes the place of No. 27, and that No. 27 did not go to-night? A. Yes."

"8. Did the person who informed plaintiff that he could ride to Hillsdale take up his ticket after traveling about eight miles? A. Yes.

"9. Did the person who took up the plaintiff's ticket appear to be acting as conductor? A. Yes.

"10. From the time that plaintiff entered the car until his ticket had been taken up, was there any other person in this car except passengers? A. No.

"11. Did the person who took up plaintiff's ticket take up the ticket of any other passenger, and if so, what was the passenger's name? A. Yes; Adams.

"12. Did the plaintiff while on the train act in a quiet and peaceable manner? A. Yes.

"13. Did the train stop at Ocheltree, Kan., and did Adams get off? A. Yes.

"14. Did the train then move on to Springhill and then stop? A. Yes.

"15. While the train was at rest at Springhill, did an officer or employee of the company approach the plaintiff and in a boisterous manner ask the plaintiff: 'What are you doing on this car?' A. Yes.

"16. Did plaintiff inform said person that he had purchased a ticket from the agent at Olathe, and that the agent informed him that he could ride on that train? A. Yes.

"17. Did the said person then say, 'This train doesn't carry passengers, and you must get off'? A. Yes.

"18. Did not plaintiff then in a quiet manner insist on going to Hillsdale, and did not the person say, 'I told you to get off this car'? A. Yes.

"19. Did plaintiff then get off the car and walk to Springhill? A. Yes.

"20. While plaintiff was then walking along the side of the car, did the person who took up the ticket come to him, with his lantern, and request the plaintiff to take back his ticket and tear it up? A. Yes.

"21. Did the plaintiff take back his ticket? A. No.

"22. What hour of the night was it when plaintiff got off the train? A. About 9 o'clock P. M.

"23. What was the distance from where plaintiff got off the car to Hillsdale? A. About eight miles.

"24. Where did plaintiff stay that night? A. Springhill.

"25. Was the defendant, through its agents and

servants, guilty of gross negligence toward the plaintiff? A. Yes."

"SPECIAL QUESTIONS ASKED BY DEFENDANT.

"1. In assessing plaintiff's damages, how much, if anything, do you allow plaintiff for expenses? A. Fifty-eight cents.

"2. How much do you allow plaintiff, if anything, for loss of time? A. Nothing.

"3. How much do you allow plaintiff, if anything, for exemplary or punitive damages? A. $175.

"4. How much, if anything, do you allow plaintiff for humiliation or disgrace? A. $50."

The plaintiff in error claims that the train which plaintiff boarded was not No. 27, which carried passengers, but No. 35, upon which passengers were not allowed to ride, and that the conductor could not stop the train at Hillsdale without disobeying his orders. Judgment was rendered on the general verdict, and a motion for a new trial was overruled.

*Pratt, Dana & Black*, for plaintiff in error.

*J. P. Hindman*, and *Parker & Hamilton*, for defendant in error.

The opinion of the court was delivered by

CUNNINGHAM, J.: It is claimed that the railroad company is not liable for any sum whatever, because the plaintiff was riding on a train which, under the rules of the company, was not permitted to stop at Hillsdale, or even carry passengers at all, and that the conductor was required to obey the regulations of the company in running its trains; that the company has the right to make reasonable rules for the running of its trains and the carrying of passengers; that it is not bound to carry passengers on all trains or to stop at all stations, and that the traveling public

must conform to these rules. These claims are without fault, but do not fit the facts of this case. It was shown in the evidence that train No. 27, due in Olathe at 6 : 35 P. M., regularly carried passengers, and it appears from finding 5 that this train on which plaintiff took passage did actually arrive there at about that time. The ticket agent, who was the company's representative at Olathe at the time for this purpose, told the plaintiff, knowing where he was going, that the train was coming. Acting on this suggestion, he went to the caboose, and, before getting on, inquired of the company's employee who appeared to be in charge of it, and who afterward took up plaintiff's ticket, if "that freight-train would carry him to Hillsdale," and was informed that it would ; that it took the place of No. 27, which was the one that ordinarily carried passengers, and he could go to Hillsdale on it.

If all of these representations were untrue, and the train which plaintiff boarded was not, under the rules of the company, scheduled to stop at Hillsdale, there is nothing to show that he had knowledge of such fact. He made all reasonable inquiry of those whom the company had put there to furnish such information to ascertain if he might rightfully enter the train, and acted on the information thus received. He had a right to rely on all of these representations and assurances. They were made by the agents of the company within the scope of their agency, in the execution of their duties, and bound the company. Acting on them, the plaintiff had a right to go upon that train and be carried to the specified destination. To be ejected from the train before this was accomplished was a wrong for which a recovery might be had.

This case is clearly distinguishable from *A. T. & S.*

*F. Rld. Co. v. Gants,* 38 Kan. 608, 17 Pac. 54, 5 Am. St. Rep. 780, relied on by the plaintiff in error, where it was held probable that the plaintiff did not take "the next train," as directed by the local agent, or, if he did, opportunity was given him to ascertain the fact that the train upon which he had taken passage did not stop at the station to which he had purchased his ticket, if he had paid attention to the warning of the brakeman to that effect.    More than this, it was there held (page 621) :

"If a passenger has suffered in his business, or been put to expense by the delay or refusal of the railroad company to carry him as promised by its ticket agent, he would be entitled to ample damages therefor."

It is contended, however, that under the circumstances no recovery of exemplary or punitive damages should be allowed.    This court has, in *S. K. Rly. Co. v. Rice,* 38 Kan. 398, 402, 16 Pac. 817, 5 Am. St. Rep. 766, laid down the rule relating to damages for the wrongful expulsion of a passenger from a train, as follows : "If the expulsion be malicious, or through negligence which is gross and wanton, then exemplary damages may be awarded." In *Cady v. Case,* 45 Kan. 733, 26 Pac. 448, it was said : " Whenever the elements of fraud, malice, gross negligence or oppression mingle in the controversy, the law allows the jury to give what is called exemplary or vindictive damages." This case collects and cites a large number of cases decided by this court to the same point.

The court instructed the jury that, before they could allow exemplary damages, they must find in the transaction complained of either malice, wantonness, wilful oppression or violence.    The jury must, therefore, have found some one or more of these ele-

Railroad Co. v. Little.

ments present, and we think the evidence warranted them in so doing. Besides this, the jury specifically found that the acts of the agents of the company were such as would make it "guilty of gross negligence toward the plaintiff." The case was, therefore, under the findings and authorities, one for vindictive damages.

It is further insisted that damages for humiliation or disgrace should not have been allowed, because, at the time of the expulsion, no one was present but the conductor, brakeman and plaintiff, and, the expulsion being thus private, there was no indignity, insult or injury to plaintiff's feelings, by being publicly expelled. We are not disposed to go into a consideration of how much of publicity must accompany a wrong, in order to humiliate or disgrace. A rule could hardly be formulated. What would humiliate one would not affect another. In this case, the plaintiff was on his way to Hillsdale to fill an appointment to make a political speech. He was of necessity compelled to notify the public why he was unable to keep the appointment. It is a matter of common knowledge that he has occupied the office of attorney-general of this state, and to have it go out that he had been expelled from a railroad-train was certainly well calculated to humiliate and disgrace him, and was an injury for which damages might be awarded.

We find no error in the judgment, and, hence, must affirm the same.

All the Justices concurring.