Argued June 4; affirmed June 30, 1936

# LAMB *v.* WOODRY ET AL.
### (58 P. (2d) 1257)

*W. C. Winslow*, of Salem, for appellants.

*Custer E. Ross* and *Dwight Lear*, both of Salem, for respondent.

KELLY, J. On October 30, 1934, plaintiff purchased a heating stove at the agreed price of $8.50. At that time plaintiff signed a conditional sales contract, in the body of which F. N. Woodry is named as the seller, but which was signed by D. E. Woodry as seller. Plaintiff issued two checks to defendant, F. N. Woodry, in the sum of $4.25 each. On November 14, 1934, one of these checks was paid. The other check bears the superscription, "Hold till Dec. 3." On January 15, 1935, defendant, F. N. Woodry, tendered it for deposit, but on the following day, in the process of clearing, the bank, upon which it was drawn, refused payment and the check was returned to defendant, F. N. Woodry, who retained it until the trial of this case in the circuit court.

On the 8th day of April, 1935, defendant, Don Woodry, went to the home of plaintiff. The testimony is conflicting as to what then occurred. In effect, plaintiff's version of the occurrence is that she first asked said defendant to wait until her husband would return from his day's work in order that he might make a satisfactory adjustment and when defendant declined to do that plaintiff refused to accord said defendant the privilege of taking the stove unless and until he should return to plaintiff the unpaid check above mentioned. Plaintiff claims that when defendant, Don Woodry, took hold of the stove plaintiff asked one

Aschenbrenner, an elderly man, who was then temporarily living with plaintiff and her husband, to prevent Woodry from taking the stove; that Aschenbrenner also took hold of the stove; that ashes, coals and a burning stick of wood were thrown out of the stove on to the floor; and that, among other things that happened, defendant, Don Woodry shoved plaintiff up against a bedroom door near which she was standing. Aschenbrenner testified that his contest or tussle with said defendant resulted in both men being thrown to the floor. Aschenbrenner also corroborated plaintiff in her statement that said defendant pushed or shoved her away from where she was standing. Plaintiff also testified that Woodry called Aschenbrenner a "damned old fool of an old man," and that, as Woodry was leaving, plaintiff asked him what he was going to do with that check, and said defendant replied: "I am going to use it to prosecute you with."

Mr. Don Woodry denied shoving plaintiff against the door and testified that he did not at any time come in contact with or touch her. He denied using the offensive language toward Aschenbrenner. He denied that there was any fire in the stove when he took it and asserted in effect that plaintiff consented to his taking the stove. Woodry also denied that he said anything about prosecuting plaintiff.

Plaintiff was enceinte at the time of the foregoing occurrence and there is testimony to the effect that the nervous excitement caused by said defendants' repossession of the stove produced a condition indicating danger of miscarriage to prevent which plaintiff was required to spend several weeks in bed.

The jury returned a verdict in favor of defendant, Medora Woodry, who is the wife of defendant, F. N.

Woodry. Defendant, Don Woodry, is the son of his codefendants.

Appealing defendants present 23 assignments of error.

The first of these to be discussed in appellants' brief is based upon the action of the trial court in over-ruling defendants' motions for involuntary nonsuit and directed verdict.

Defendants argue that defendant, Don Woodry, in taking the stove was in the performance of a lawful act and if plaintiff interfered with that lawful act by force she became the aggressor, and in that state of the case the mere fact that the bodies of defendant, Don Woodry, and plaintiff may have come in contact one with the other, would not constitute an assault, or an assault and battery.

This argument applies to a number of assignments of error other than the one first discussed, particularly, assignments 8, 9, 10, 11 and 19, the first four of which are based upon the refusal of the court to give certain requested instructions indicating that, if plaintiff resisted Woodry's attempt to take the stove, plaintiff became the aggressor; and the last one, upon the giving by the court of the following instruction:

"I instruct you that where the buyer of personal property on a conditional sales contract makes default in payment, and the seller, by the terms of the contract is authorized, in such event, to retake the property, the seller is entitled under this power to repossess the property if he can do so peaceably, but if the buyer objects and protests against such retaking, and obstructs the seller in doing so, it is the duty of the seller to proceed no further in such attempted retaking, but to resort to legal process to enforce his right of repossession. The seller is not entitled to use force to retake possession of such property and if he does

36

and in so doing touches the resisting person he is guilty of assault and battery.''

■ It is true that, under a conditional sales contract by the terms of which in the event of default of payment, the seller may retake the property sold, there is a legal right on the part of the seller to repossess such property; but this right may be exercised without the aid of legal process only when the purchaser consents thereto. In case the purchaser refuses to consent or affirmatively objects, the seller's only recourse is by legal proceedings. In such a case, if the seller proceeds in defiance of the purchaser's objection and resistance, the seller becomes the aggressor.

The case of *Biggs v. Seufferlein,* 164 Iowa 241 (145 N. W. 507, L. R. A. 1915F 674), cited by defendants, is one wherein the court failed to instruct the jury that if plaintiff has surrendered her possession of the stove to defendant, as defendant testified that she did, the defendant had the right to defend his possession by such force as was reasonably necessary to maintain it. In the case at bar, we are not confronted with a request for such an instruction.

■ The jury heard the testimony and found for the plaintiff. There is substantial testimony supporting the claim that plaintiff refused to assent to the taking and objected thereto.

Appealing defendants also argue that plaintiff was not physically injured. No good purpose would be served by making an extended reference to the testimony on this point. We think that it tends to support the claim of plaintiff that she suffered physical pain and was required to remain in bed for an extended time by reason of the actions of defendant, Don Woodry, in taking the stove. There is testimony also which tends to show that said Woodry acted in such

disregard of the rights of plaintiff as to warrant the jury in finding that he acted with malice, as that term is understood in the law of torts. For these reasons, we hold that the trial court was justified in overruling the motions for nonsuit and directed verdict.

Defendants cite *Lambert v. Robinson,* 162 Mass. 34 (44 Am. St. Rep. 326, 37 N. E. 753), in support of their contention that the record of the instant case contains no showing upon which a jury might rightfully find that defendants committed an assault or assault and battery upon plaintiff. That case holds that where a person has the right to enter upon the land of another and remove personal property, such person, if resisted, has a right to use such force as may be necessary and is liable for assault and battery only in case he uses excessive force.

*Walker Furniture Company v. Dyson,* (N. Y.) 19 L. R. A. (N. S.) 606, 32 App. D. C. 90, also cited by defendants, announces the same rule.

The courts are at variance upon this question. An Annotation citing and reviewing the authorities upon it appears in 9 A. L. R. 1180. We quote the first paragraph of that annotation:

"By the great weight of authority it is held that where the buyer of property upon conditional sale makes default in his payments and by the terms of the agreement the seller is authorized in such event, to retake the property, he is entitled under this power to repossess himself of the property if he can do so peaceably, but if the buyer objects and protests against the seller's retaking the property, and obstructs him in so doing, it is the duty of the seller to resort to legal process to enforce his rights to repossession. He is not entitled to use force, and he is guilty of assault and battery or of trespass, as the case may be, if he does so."

The authorities there cited, in support of the foregoing, are supplemented by citations in A. L. R. Blue Book of Supplemental Decisions and its current pocket supplement.

We venture to quote from *Street v. Sinclair*, 71 Ala. 110:

"The seizure of the property by the mortgagee, in such a case, should of course be effected without force or violence. The same rule must govern as in cases of recaption. It must not be perpetrated 'in a riotous manner, or attended with a breach of the peace.' 3 Black. Com. 4; Bobb v. Bosworth, 12 Am. Dec. 273. Subject to this limitation, the owner of personal property, wrongfully withheld from him, may have redress by his own act without resorting to the delay of litigation. But he proceeds at his own peril if he commit the slightest assault, or other breach of the public peace, for, if individuals were thus allowed to redress their own private injuries, the peace of society and the good order of government would cease."

On November 8, 1934, the supreme court of Alabama reaffirmed the foregoing pronouncement: *Cox v. Stuart*, 229 Ala 409 (157 So. 460).

As stated in the foregoing quotation from the annotation in 9 A. L. R., supra, the weight of authority supports it and we think the better reasoning attends it.

We are not unmindful of the sharp conflict in the testimony. If defendants' version were true, plaintiff could not recover; but that question was for the twelve.

■ The second assignment of error is based upon the court's refusal to permit witness Trindle, who is the district attorney for Marion county, to testify that shortly after April 8, 1936, witness Aschenbrenner called upon him seeking a warrant for the arrest of witness Don Woodry; and in recounting the facts upon

which he sought such warrant, witness Aschenbrenner made no reference to an assault upon himself or upon plaintiff. This is in the nature of impeachment by significant omissions. It does not affirmatively appear that Aschenbrenner was specifically questioned in respect to the allegedly omitted details: *State v. Ogden,* 39 Or. 195, 205, 206 (65 P. 449) ; Vol. 7, Ency. of Evid. 152, authorities there cited in note 66.

The same principle applies with reference to the trial court's action in sustaining plaintiff's objection to the proposed questioning of witness Aschenbrenner on cross-examination as to whether he had said anything to the district attorney about an assault or an assault and battery being committed by Woodry.

As far as the record appears, Aschenbrenner applied to the district attorney for a warrant for the arrest of Woodry upon a charge of larceny and the district attorney advised him that the crime of larceny had not been committed. There is nothing in defendants' showing which indicates what Aschenbrenner failed to tell the district attorney, or that he failed to tell him anything, except the implication to be derived from the general statement of their attorney, when he said: "I am asking for what he didn't say." In this state of the record, we hold that no error was committed in rejecting defendants' offer of proof.

■ Defendants' third assignment of error is based upon the court's action in permitting plaintiff to amend her complaint to conform to the proof by pleading that a battery as well as an assault had been committed. The testimony upon which this amendment is based was received without any objection, and the court had the authority, within its discretion, to permit the

amendment: Section 1-906, Oregon Code 1930. *Marbury Lumber Co. v. Wainwright,* 150 Ala. 405 (43 So. 733).

Mr. Justice RAND reviews the former decisions of this court upon the power of the court to permit amendments in the case of *Davis v. Springer,* 128 Or. 582, 585, (275 P. 600).

We quote from that opinion:

"The rule deducible from these authorities, we think, is that at any stage of the proceeding of the court, in the exercise of its judicial discretion, may permit any pleading to be amended if the amendment does not bring a new cause of action or suit or subtitute another and different cause of action or suit for the one sued on or so substantially change the issues of the cause of action or suit as to take the other party by surprise as to matters of which he had no notice and could not be prepared to meet."

The trial court complied with his rule.

■ Assignment No. 4 complains of the trial court's action in overruling defendants' motion to strike portions of plaintiff's complaint. This motion was made after the testimony in the case had been received. No error was committed in this respect. The questions presented by assignment No. 4 are the same as those urged in reference to assignments 5, 13, 14, 15 and 17. Defendants argue that only the assault or the assault and battery may be considered in determining the amount to be awarded as general or compensatory damages; and that testimony of other conduct and of threats by defendant, Don Woodry, should not be considered for that purpose but only for the purpose of determining whether said Woodry acted maliciously. It is not alone the assault or the assault and battery which may have produced physical and mental suffer-

ing, but the circumstances attending it and the oppressive or other unwarranted manner in which it was committed. Plaintiff was entitled to recover such damages as would compensate her for such physical and mental suffering and injury as she experienced as a result of said defendants' misconduct.

To hold otherwise, would be to say that a woman in a delicate condition should not recover as compensatory damages any greater sum when assaulted and beaten by an assailant, who, at the time knowing that her husband is absent uses rude and ill-tempered language in her presence, threatens to prosecute her criminally, overcomes by force such physical resistance as she has at her command, and in the presence of her children deprives her of the means of heating her home, than she would be entitled to recover if only an assault or assault and battery had occurred unattended by such physical condition on her part and aggravating and disturbing conduct and language on the part of the assailant. All of the misconduct is denied in the case at bar by the defendant, but plaintiff and her witnesses testify to such occurrence.

"Evidence of acts and circumstances of outrage, or of insult accompanying an assault and battery, which wound the feelings and tend to lower the plaintiff in the estimation of society, is admissible in evidence to enhance the damages; * * *." 5 C. J. Subject: Assault and Battery p. 673, § 111, and authorities cited in note 61.

The supreme court of Kansas has contributed to the elucidation of this question. We quote from an opinion by Mr. Chief Justice Johnson of that court:

"The testimony of the appellee, which the jury accepted, shows an assault of an aggravated character. The seizure of the appellee, the snatching of the box in

an insolent manner, and the searching of the same for stolen goods, in the presence of others, was a wanton insult and indignity, which was emphasized by the fact that when Cobb discovered that the goods had not been obtained at his store no apology was made or excuse given, and when appellee complained she was ordered to leave the store. This was a direct invasion of appellee's rights of personal security. There was inchoate violence, the insult, and the implied charge that she was a shoplifter. It has been said that: 'The right to one's person may be said to be a right of complete immunity to be let alone. An attempt to commit a battery usually involves an assault, a putting in fear, a sudden call upon the energies for prompt and effectual resistance, and the law for these reasons makes the assault a wrong even though no actual battery takes place.' Cooley on Torts, 9. The assault of itself gave the appellee a right of action against the wrongdoer, and the authorities are all agreed that, whenever the attack or invasion of personal security is of such a character as to give a right of action against the wrongdoer, the injured person may recover for the mental suffering which is a consequence of the wrong. The mental suffering therefore does not stand alone, as appellants would contend, but is connected with and has a foundation in the assault which gave the appellee a right of action at common law. In this state damages of this kind were allowed where a passenger on a railway train having a good ticket and a right to ride was told by the conductor that the ticket was invalid and that he must leave the train. The passenger had no money to pay his fare, and the conductor took him by the coat collar, led him out of the car, and when they reached the platform some one else paid his fare, and he was allowed to proceed on his journey. It was held that he was entitled to recover actual compensation for the indignity and injury to which he was subjected, and, further, if there was gross negligence amounting to wantonness on the part of the conductor, that there might be a recovery of exemplary damages. S. K. Ry. Co. v. Rice, 38 Kan. 398, 16 P. 817, 5 Am. St. Rep. 766. See also Railroad

Co. v. Little, 66 Kan. 378, 71 P. 820, 61 L. R. A. 122.''
*Lonergan v. William Small & Co.,* 81 Kan. 48 (105 P.
27, 25 L. R. A. (N. S.) 976).

In a case decided more than half of a century ago
by the supreme court of Louisiana, the same principle
is recognized. We quote the concluding statement of
the prevailing opinion:

''In the action for damages for this outrage, a jury
has rendered a verdict for two thousand dollars, which
has been approved by the judge a quo. We know of no
rule by which to measure the exact pecuniary indemnity
which will furnish compensation for such unprovoked
violence and fathomless humiliation as Armstrong was
subjected to, aggravated by the shock to his shattered
nerves and the sense of his utter helplessness.

Let the tree lie as it has fallen.''
*Armstrong v. Jackson,* 37 La. Ann. Rep. 219.

In a case wherein exemplary damages were ex-
pressly held to be nonrecoverable, the supreme court
of Connecticut say:

''The court instructed the jury that in determining
the amount of compensatory damages to be awarded
the plaintiff, they might take into consideration the
indignity she had suffered by an assault in so public a
place, the mental as well as the physical suffering
which it caused her, and such loss as had been proved
she had thereby sustained from inability to work at her
trade.

'All the attending acts and circumstances which ac-
company and give character to the assault may be given
in evidence to enhance the damages.' Brzezinski v.
Tierney, 60 Conn. 55, 62. Mental as well as physical
suffering, when properly alleged, may be proved as an
element of actual damage, and as naturally and directly
resulting from an assault of the character described in
the complaint; Gibney v. Lewis, 68 Conn. 392, 396;
Seger v. Barkhamsted, 22 Conn. *290, *296; Masters v.
Warren, 27 Conn. *293, 299. The defendant has no

cause to complain of the charge of the court with reference to the elements which go to make up compensatory damages.'' *Maisenbacker v. Society Concordia,* 71 Conn. 369 (42 Atl. 67, 71 Am. St. Rep. 213).

The same doctrine is announced in the following cases: *Root v. Sturdivant,* 70 Iowa 55 (29 N. W. 802); *Birmingham Ry. Light & Power Co. v. Norris,* 2 Ala. App. 610 (56 So. 739); *John R. Thompson & Co. v. Vildibill,* 211 Ala. 199 (100 So. 139); *Dannenberg v. Berkner,* 118 Ga. 885 (45 S. E. 682); *Western Union Telegraph Co. v. Bowdoin,* (Tex. Civ. App.) 168 S. W. 1; *Borland v. Barrett,* 76 Va. 128 (44 Am. Rep. 152); *Barbee v. Reece,* 60 Miss. 906.

We do not mean to say that it is the judgment of this court that Don Woodry conducted himself as plaintiff claims. On that point, we are bound by the finding of the jury.

Defendants' sixth assignment of error is based upon the portion of the record which recounts defendants' objections to certain statements alleged to have been made by counsel for plaintiff during his argument to the jury. The arguments to the jury on both sides had been completed, the jury was excused and in chambers the following took place:

''Mr. Winslow: During the course of counsel's remarks to the jury he made certain statements which we shall term inflammatory, and we ask the court to instruct the jury to disregard them, among others, that if it were not for the law, they would have been cold blooded enough—the Woodrys—to have broken into the house and taken the property, that is the substance. And there was a vicious attack on our attempt to recall Mr. Aschenbrenner, because we did that, that it was additional evidence of malice, that this was malicious, there was considerable said along that line; our attack on Mr. Aschenbrenner was a legitimate attack, proper

impeachment, and there was no evidence there was any malice in this transaction,—and we ask the court to so instruct the jury.

"Mr. Ross: I can't agree with counsel on what he claims I said.

"Mr. Winslow: Mr. Ross in his argument said our attack on Mr. Aschenbrenner was malicious.

"Mr. Ross: Quite right.

"Mr. Winslow: We are asking the court to instruct the jury this was not the case. We also ask the court—Mr. Ross stated to the jury that Mrs. Lamb came very nearly having a miscarriage, that statement was made and we claim there is nothing in the evidence to justify it. We also ask the court to instruct the jury to disregard the remarks of Mr. Ross where he picked up the contract and referred to its terms and said he never saw a worse one, and also in connection with the same matter where he said that Mr. Woodry was trying to take the stove and sell it to somebody else." (Here reference is made in the record to a matter not now urged by appellants.)

"Mr. Winslow:   *   *   *   Mr. Ross also in the course of his argument referred to our client, as being well dressed, and wearing a diamond; that is improper under any circumstances and we move the court to disregard it."

These motions were denied and exceptions allowed.

As we read the foregoing record, plaintiff's attorney could not agree with defendants' attorney that there had been any attack upon defendants' attorney or defendants for recalling Aschenbrenner for impeachment by confronting him with his criminal record.

■ It would seem that the attack termed by plaintiff as malicious occurred in the argument of defendants' attorney. We are not privileged to know what that argument was. The trial judge doubtless heard it and evidently thought that defendants' attorney had im-

pressed upon the jury the hard and damaging fact of Aschenbrenner's impeachment with such emphasis and effect that plaintiff's claim as to the alleged malicious character of such argument was merely argument of advocacy and without effect. We find no reversible error in that conclusion.

■ Some latitude must be allowed in the matter of argument. To speak of citizens engaged in business, as defendants are shown to be, as cold blooded or as willing to break into plaintiff's house to obtain their property, if it were not unlawful to do so, when considered in the cloistered cell of an appellate judge, uninfluenced except by the single purpose to promote justice, is an enormity, repellant and forbidding; but from the viewpoint of an advocate influenced by and voicing the claims made by his client, and her testimony, and that of her witnesses, tending to show an assault and battery, a threat to prosecute plaintiff criminally, the withholding of plaintiff's bank check, the use of unseemly and harsh language, and the taking of a stove, while a fire was yet burning therein, producing fear and panic in plaintiff's house, all because the small sum of $4.25 had not been paid, such expression, as argument, emanating from the partisan, biased relationship of an advocate, can not be held to constitute reversible error, especially, when no objection was interposed at the time it was made and no opportunity given such advocate to retract, modify, explain or elaborate upon, the objectionable statement during his address.

■ The comment attributed to plaintiff's attorney, as he picked up the contract in suit and said he never saw a worse one, is in the nature of testimony disclosing a rather surprising paucity of such papers in the

attorney's experience, but we are unwilling to hold that such an expression constitutes reversible error. The execution of the contract by D. E. Woodry as seller, notwithstanding that F. N. Woodry is named therein as seller, the time of maturity of the deferred payment being fixed as December 3, without indicating the year thereof, and the acceptance of bank checks, when the contract was prepared, without making any reference thereto in the contract, all these circumstances open wide the door to the argument that the contract was unusual and irregular. As stated, we have no record of the argument in its entirety, but, as a mere conjecture, we assume that the reaction of a skilled lawyer to such a document would naturally be one of disapproval.

As to the attorney's comment that Mr. Woodry was trying to take the stove and sell it to somebody else, we think that was a natural deduction to draw. There is no reason that occurs to us why such a course should not have been taken. The sales contract in suit expressly provides for resale in case of repossession.

The comment in argument to the jury that plaintiff nearly had a miscarriage, treated as argument by an advocate, is supported by the record. We think it unnecessary to elaborate upon this point. Comment upon the appearance of one of the defendants as a well-dressed gentleman, wearing a diamond, comes under the same category. The wealth of defendants is a matter to be considered upon the question of punitive and exemplary damages.

As to assignment No. 7, which calls attention to the omission from the court's definition of assault, of the element of present ability to commit physical violence, we think that the jury could not have been

48

thereby misled in any manner, and hold that no reversible error is shown.

■ Assignment No. 12 is based upon the court's refusal to give the following instruction:

"If no physical violence whatever is offered or threatened, but the injury resulted from fright alone, there is no assault."

The court's definition of assault in effect covered this requested instruction.

■ The seventeenth assignment charges error in refusing to give the following requested instruction:

"There has been something said in the evidence about plaintiff's being pregnant at the time of the alleged assault. You are instructed that even if you find that this condition did exist it does not change the rights of any of the parties to this case."

No error was committed by the court in not giving that instruction.

If defendant knew that plaintiff was pregnant, but nevertheless committed the assault and battery upon her as claimed by plaintiff, certainly his conduct was more reprehensible than it would have been if plaintiff had not been in that condition.

Even if defendant had no notice or knowledge of plaintiff's delicate condition, the result in physical and mental suffering of such an assault unquestionably would be more severe and would entitle plaintiff to greater compensation than if she had not been enceinte.

■ Assignments Nos. 16 and 18 are based upon the failure of the trial court to instruct upon the denial by defendants of the allegations in plaintiff's complaint charging that defendants were partners, associated in business at Salem, Oregon, under the name and style

of F. N. Woodry; that their financial worth was and is in excess of $30,000; that the two checks were issued by plaintiff in the sum of $4.25 each; that on said 8th day of April, 1935, one only of said checks was unpaid and that on the 8th day of April, 1935, plaintiff was the owner of said heating stove.

We think that the learned and experienced trial judge made it plain to the jury by his instructions that the question, which determined whether defendants rightfully repossessed said stove, was whether plaintiff objected to and resisted Don Woodry in his effort to retake it rendering it impossible for him to take it peaceably.

It appears that the court expressly told the jury that defendants deny each and every allegation contained in the complaint.

■ Complaint is made because the court also told the jury that defendants ask that this action be dismissed and that defendants recover their costs and disbursements. The matter of costs and disbursements was not one for the jury's consideration, but such reference, as was thus made thereto, is not reversible error.

■ Assignment No. 20 criticizes the court's instruction to the effect that in making repossession of goods sold on conditional sales contract by an agent, who is not instructed by his principal to employ personal violence in order to regain possession, nevertheless, if the agent proceeds to retake the property in a violent manner acting in the business of the principal, the agent is acting within the scope of his employment thus making the principal liable for any violence of the agent in attempting to retake the goods.

It is urged that there is no evidence in the record that Don Woodry was ever authorized to repossess

this property. We think that there was sufficient evidence of ratification of Don Woodry's course in repossessing the stove to imply that he was authorized to repossess it. The execution by him of the sales contract would imply a joint enterprise at least on his part and that of his father.

■ Assignment No. 21 is based upon an instruction to the effect that, if Don Woodry committed any of the acts charged and plaintiff was thereby caused to suffer injury, plaintiff would be entitled to recover therefor.

It is argued that fright affords no basis of recovery in a case of this kind.

"Whatever may be the rule where defendant's conduct is negligent merely, the authorities agree that there may be a recovery for physical pain and suffering resulting from fright caused by the wilful wrong of another." Annotation, 11 A. L. R. p. 1141, and authorities there cited.

■ As to assignment No. 22, which calls attention to an instruction authorizing the jury to find in an aggregate sum without segregation of the compensatory damages from the punitive, if any, we think that sometimes such segregation saves a retrial after an appeal has been heard. We refer to those cases where error has been committed with reference to the recovery of punitive damages. Many times such error may be corrected on appeal where, in the verdict, the damages are segregated. We are not called upon to give consideration to such a question in the case at bar.

■ We are unable to construe the instruction criticized by defendants' assignment No. 23 as it is construed by defendants. We think that the court restricted the character of removal of the stove upon which plaintiff would be entitled to recover to be a retaking thereof

"over the protest and against the will of plaintiff" and to those acts by the doing of which plaintiff was so frightened that it affected her nervous and physical systems and caused her to suffer pain and discomfort. The authorities, heretofore cited, support such a principle.

It is only fair to the writer to say that this case was submitted on briefs and this opinion has been greatly extended in an effort to cover each point presented in such briefs. Such a course is not at all onerous, but it invites the distasteful charge of prolixity.

We find no reversible error and for that reason the judgment of the circuit court is affirmed.