C. S. BRADSHAW, Administrator, Appellant, v. J. M. FRAZIER.

**Abuse of Process: EJECTMENT:** *Directed Verdict.* Defendant obtained a judgment of forcible entry and detainer against the stepfather of plaintff's intestate. At the time the writ of removal was executed, the intestate was sick with the measles and able to sit up only a short time. The day was cloudy and cold and the death of the intestate resulted from the exposure occasioned by the removal. *Held,* sufficient to support a finding that there was abuse of process and that it was error to direct a verdict for defendant.

**PHYSICIAN'S CERTIFICATE AS TO HEALTH:** *Not Defense as Matter of Law.* The death of plaintiff's intestate resulted from exposure occasioned by the execution of a writ of removal sued out by defendant. The evidence was conflicting as to when the physician's certificate, that intestate could be removed without injury to his health, was issued, and as to the examination on which it was based. *Held,* that the existence of such certificate did not constitute a defense as a matter of law.

CONTRIBUTORY NEGLIGENCE OF NURSE.   Where the death of plaintiff's
   intestate resulted from exposure occasioned by the execution
3  of a writ of removal sued out by defendant, the fact that the
   intestate's parents were guilty of negligence in caring for in-
   testitate after the exposure constituted no defense to an action
   for abuse of process.

*Appeal from Polk District Court.*—HON. THOMAS F. STEV-
ENSON, Judge.

SATURDAY, APRIL 13, 1901.

ACTION at law to recover damages for an abuse of le-
gal process alleged to have caused the death of plaintiff's
intestate.   There was a trial to a jury, which resulted in a
disagreement.   Afterwards, upon suggestion of the trial
court, a motion was filed by the defendant for a directed
verdict, based upon the evidence submitted at the former
trial.   This motion was sustained, and judgment entered
against the plaintiff.   He appeals.—*Reversed.*

*Charles J. Donnelly* and *James C. Hume* for appel-
lant.

*McHenry & McHenry* and *W. A. Connolly* for appel-
lee.

SHERWIN, J.—The plaintiff is the administrator of the
estate of Georgia Frazier, deceased.   Georgia Frazier was
the daughter of the defendant's son, and at the time of her
death was 12 years old.   Her father was dead and her
mother had remarried.   Her stepfather's name was Brown,
with whom and her mother she was living at the time of the
transactions in question and at the time of her death.   Mrs.
Brown and her children had inherited from her deceased
husband a small piece of land, upon which there was a
small frame house.   Before her marriage to Brown, Mrs.
Frazier had rented the house on this land to the defendant,
Frazier, her father-in-law, taking his note for $30 in pay-
ment of the rent.   His lease expired in the spring of 1897.

In June, 1896, Mrs. Frazier and Mr. Brown were married. In August following the house was vacant, and Brown and his family moved into it. Before doing so, however, Brown had attempted to arrange with the defendant for occupying it, but the defendant demanded the payment of $30 rent, and they never came to any agreement on the subject. After the family moved into the house Brown and the defendant had several altercations over the matter, but Brown would neither pay rent nor vacate. The defendant brought an action of forcible entry and detainer against Brown, and obtained a judgment therein about the first of September, 1896. Somewhere from the seventh to the ninth of the month a writ of removal was issued on the judgment, and placed in the hands of a constable for service. The defendant went with the officer to the house and remained there until the family were ejected therefrom. Georgia Frazier had for some days before the ejection been sick with the measles. The defendant knew of her sickness, knew that her condition had been such that it was not safe to move her before, and had caused his attorney to procure a certificate from her attending physician that she had so far recovered that removal from the premises would not injure her health. The evidence fairly shows that the real purpose in procuring this certificate was to convince the officer who was expected to make the ejectment that it could safely be done. When the defendant, with the constable and posse which the defendant himself had collected to accompany them, arrived at the house, Brown was away, but Mrs. Brown and her children were there. Georgia was able to sit up for a short time only, and was still badly broken out, the eruptions being plainly visible on the exposed part of her person. The evidence tends to prove that the day was cloudy, cold, and raw, with considerable wind. The defendant immediately ordered the constable to eject the entire family. Mrs. Brown told him that Georgia was too sick to be moved, and asked that they be permitted to stay on her account, but to the mother's plea

for her sick child, his own flesh and blood, he turned a deaf ear, and still insisted upon the prompt execution of the court's mandate. The only fire in the house was then put out with water. After this was done, the constable, notwithstanding the repeated orders of the defendant to proceed with the discharge of his supposed duty, told Mrs. Brown that he would not put them out until her husband came. The husband returned about an hour thereafter, and upon his return the ejectment was completed. Georgia was wrapped in a shawl and heavy stockings were drawn over her feet by her mother, and she went into the yard with the household goods. Her mother's efforts to have her taken into neighboring houses were without avail, because of the contagious nature of her affliction. After remaining in the yard about an hour and a half she was taken in a buggy to the house of her aunt, five miles distant. Before starting for the aunt's she complained of being cold and sick, and from that time she declined rapidly, until death relieved her, some nine or ten days thereafter. The facts which we have narrated all find support in the record before us. That her death was caused by this exposure in the cold house and in the yard find abundant support in the evidence, and the controlling question we have for determination is whether the facts recited, if true, are sufficient to support a finding that there was an abuse of process in the case.

We are clearly of the opinion that they are. It is conceded that the writ of removal was lawful, and, on the other hand, it is virtually conceded that there may be cases where damages may be recovered for an abuse in the service or execution of the writ. Numerous cases may be found in the books where it is held an abuse of process, rendering the officer liable for damages, to handle goods in a rough or improper manner, or to wholly or partially destroy them. *Snydacker v. Brosse,* 51 Ill., 357; *Murray v. Mace,* 41 Neb., 60 (59 N. W. Rep., 387); Cooley, Torts, 462. It is an abuse of lawful process "if, after arrest upon civil or criminal process, the party arrested is subjected to unwarrantable

insult or indignities, is treated with cruelty, is deprived of proper food, or is otherwise treated with oppression and undue hardships." *Wood v. Graves,* 144 Mass. 366 (11 N. E. Rep. 567); *Smith v. Weeks,* 60 Wis.. 94 (18 N. W. Rep. 778); *McLaugry v. Porter* (Sup.), 33 N. Y. Supp. 464. See, also, *Slatten v. Railroad Co.,* 29 Iowa, 148.

Our own statute so far protects the defendant in cases of this kind as to provide that no removal shall be made except in the daytime. Probably no Iowa lawmaker ever conceived the idea that a writ would be executed at the expense of human life, and consequently our statute is free from the imputation that such a prohibitory act would create. But, without such a statute, there can be no doubt that the law will more carefully guard the health of a human being than it will personal property; otherwise, it would not deserve the respect of the meanest inhabitant of the state. Nor is the certificate of the physician which we have referred to a legal shield for the defendant. The evidence is conflicting as to when it was issued in fact, and as to the examination made by him before issuing it. It was proper for the jury to consider it in determining the issues presented, but the court should not say as a matter of law that it was a complete defense. It is claimed there was contributory negligence on the part of the parents of the deceased girl, and on the part of the relatives with whom she remained for a few days after the ejectment. This is not a defense in this case. *Wymore v. Mahaska County,* 78 Iowa, 396.

Nor was it a ground in the motion for a directed verdict. If the defendant participated in the unlawful action of the constable, he is responsible for its consequences. Cooley, Torts, 468; *Hyde v. Cooper,* 26 Vt., 552.

There was sufficient evidence to take this case to the jury, and the court erred in directing a verdict for the defendant. The judgment is therefore reversed.—REVERSED.