MRS. ELIZABETH BIGGS, Appellee, v. J. J. SEUFFERLEIN, Appellant.

Assault: USE OF FORCE IN THE DEFENSE OF PROPERTY: INSTRUCTIONS. Where another is rightfully in possession of personal property the owner is not justified in committing an assault for the purpose of regaining possession of the same; but having a right of possession and to enter the premises of the other for the purpose of removal he may defend his possession thus acquired by consent with the exercise of reasonable force: and where the evidence tends to support the contention that possession was acquired by consent of the other party the jury should be instructed as to the right to exercise force in defense thereof.

*Appeal from O'Brien District Court.*—HON. JOHN F. OLIVER, Judge.

MONDAY, FEBRUARY 23, 1914.

ACTION to recover damages for assault and battery. Verdict and judgment for the plaintiff. Defendant appeals.— *Reversed.*

*Sidney C. Kerberg* and *T. E. Diamond,* for appellant.

*C. A. Babcock,* for appellee.

GAYNOR, J.—The facts upon which plaintiff predicates her right to recover, as stated in her petition, are that on or about the 25th day of January, 1911, this defendant went to her house in Sanborn, Iowa, and then and there willfully and maliciously committed an assault and battery upon her by taking and grabbing hold of her wrists and arms, and jerking and pulling her about the house, whereby she sustained personal injuries which she estimates at $2,000. The defendant pleaded a general denial. There was a trial to a jury and a verdict rendered for the plaintiff. Judgment being entered upon the verdict, the defendant appeals.

There was evidence tending to show the following facts:

That during the month of August, 1910, the firm of Kerberg & McFarland, a copartnership, were engaged in the retail hardware business in the town of Sanborn. Plaintiff was engaged in the business of conducting a boarding house in the same town. On the 29th day of August, 1910, the plaintiff hired from Kerberg & McFarland a Majestic range, and took possession of the same under the following contract:

This agreement witnesseth: That I have hired from Kerberg & McFarland, of Sanborn, the following described articles of Majestic range, upon the terms named herein, to wit: One Majestic range, No. 8142. In consideration of said hiring of said range, I agree to pay said Kerberg & McFarland at their store in said Sanborn, Iowa, the following named sums at the dates stated: $15.00 on September 25, 1910. $15.00 on October 25, 1910. $15.00 on November 25, 1910. $15.00 on December 25, 1910. $ Bal. on January 25, 1911. $ Bal. on ...... 1911. $ Bal. on ...... 1911. $ Bal. on ...... 1911. Together with interest at the rate of 8 per cent. per annum from date hereof until all said sums are fully paid. Upon failure to pay any of said sums, the payments that have been made shall be forfeited to said Kerberg & McFarland, and all the said range shall be by me restored to them, and I agree that they may without process of law take possession of said range and for that purpose they may enter any of my premises and remove the same therefrom, and I hereby waive any trespass or right of action against them for

damages by reason of any such entry and removal. I further agree that in case of default on my part in carrying out any of the several agreements herein named, I will pay any balance that may remain of the sums above mentioned after the goods once returned to said Kerberg & McFarland have been sold. That such sale may be private or at public auction, and if the proceeds shall amount to more than the balance due said Kerberg & McFarland and costs, then such surplus shall be turned over to me. I will also pay all reasonable costs and expenses and attorneys' fees that the said Kerberg & McFarland may be put to, to recover the said range and enforce this lease; that I will not in any manner dispose of any of the said articles of range nor will I remove them or any part thereof, from the place they are to be kept as is hereinafter designated, without the written consent of said Kerberg & McFarland until I have acquired title to the same as hereinafter provided; that title to same shall remain in said Kerberg & Mc-Farland until the sums herein specified are fully paid, that the said range shall be used by me only at my residence in Sanborn, Iowa, and that I will keep the same in as good repair as when I get them, except the wear and tear that may result from reasonably careful use. But upon payment of all the sums therein specified, then, upon making the last payment, the said Kerberg & McFarland are to convey said range to me by bill of sale or by surrender to me of this lease.

Prior to the happening of the matters complained of, and on the dates herein stated, the plaintiff paid, upon said range, the following sums: September 28th, cash, $10. October 21st, $4. November 4th, $8. December 9th, $10.

That the plaintiff failed to make the payments as required in said contract. That there was due and unpaid on said contract, on the 25th of January, 1911, $38. That prior to said date, the said firm had repeatedly requested plaintiff to make payments as required under the terms of the written contract, and, though she frequently promised to do so, made no other payments than as above set forth. That just before the happening of the matters complained of, the said firm had learned that plaintiff had broken up her boarding house, and intended to leave Sanborn, and that she was largely in-

debted to certain persons in the town. That on the 25th day
of January, the time when it is claimed this assault was made,
McFarland, together with this defendant, who was marshal
of the town, went to the house of the plaintiff, and the fol-
lowing conversation took place: Plaintiff: ''Well, Mr. Mar-
shal, you seem to be paying me considerable attention, making
several calls on me. I must be an awfully bad woman.''
Defendant: ''Oh, I don't know, Mrs. Biggs.'' Plaintiff:
''Well, Mr. McFarland, what can I do for you?'' McFar-
land: ''Mrs. Biggs, I thought I would come down. I under-
stand you are going to quit your boarding house, and see
what you are going to do on the stove.'' Plaintiff: ''The
stove is yours. Go and take it.'' McFarland: ''You mean
that, do you, Mrs. Biggs?'' Plaintiff: ''Yes, sir.'' There-
upon, McFarland went to the telephone in the middle room
of the house and called up the store and told his partner to
send some one down with tools and a dray. That, while he
was there, the defendant went into the kitchen and pulled
the stove out from the wall and took the pipe down. That,
after he got through, McFarland went into the kitchen and
took off the first section of the top of the stove and carried
it out into the yard. That, at this time, the man whom he
had called over the telephone arrived and immediately went
to take off the towel roll that runs along the front of the
stove. This was done in order to get the stove through the
door. About this time, plaintiff said: ''I have changed my
mind. You cannot take the stove.'' McFarland said: ''Well,
Mrs. Biggs, guess we will take it anyway. I have it in my
possession and will take it.'' Thereupon defendant said,
''What will we do?'' McFarland said, ''We will take the
stove.'' Thereupon the plaintiff said: ''McFarland, if you
were halfway decent, I would have paid you for the stove.
I got $140 right in the house, but I will never pay you another
damn cent on the stove. Take the damn thing out of here.
It was never any good.'' Thereupon McFarland and the
defendant and the hired man proceeded to carry out some

more of the loose parts, and, while the hired man was trying to get the door off, plaintiff came up and said: "You will not take the stove. If you take it, you will take it over my dead. body." Thereupon she jumped up and sat upon the reservoir on the stove. At that time, all the top of the stove had been taken off, and they were still working on the door. Then the defendant says, "Mac (meaning McFarland), don't you think it will go through the door?" McFarland said, "Well, we can try it." Then the defendant said, "Mrs. Biggs, you will please get off of the stove." She said: "I will not get off of the stove, and don't you lay your hands on me. If you take this stove, you will take it over my dead body." The defendant said, "I guess it isn't as bad as that, Mrs. Biggs," and he reached up and took hold of her and pulled her off the stove. Her feet were about six or eight inches from the floor, and she lit on her feet. Then she grabbed a coffee pot and hit the defendant over the head with it and called him certain names, and said she would shoot his brains out. After removing her from the stove, the defendant did not lay his hands on her or touch her, but said, with reference to her threat, "Now, Mrs. Biggs, I advise you not to do anything of that kind, for that won't do." Thereupon she went to the phone and called for her husband, who was at the roundhouse. They loaded the stove on the dray and went away.

The defendant's testimony tended to establish, substantially, the above facts. The plaintiff's testimony tended to show that she denied the right of McFarland and this defendant, at all times, to take the stove. Told them that they could not take it unless they had papers for that purpose; that she thereupon got up and sat upon the stove, and the defendant said, "If you don't get off that stove, I will take you off." She says, "He took me by both hands and pulled me off the range, and then there was a fight. When he pulled me off, I got back on, and he pulled me off again. I got on the third time, and he pulled me off. I grabbed the coffee pot

and struck him with it, and said: 'If I cannot get you out one way, I will get you out another. If I had a gun, I would blow your head off.' I started to go to the telephone. Defendant followed me. He took me by the arms and pulled me the length of the sitting room and then let me go. Called me a damn bitch. When he got to the door, he threw his elbow back and struck me. Finally, I got back to the telephone, and defendant went and helped McFarland and the hired man to take the range out. When he pulled me off the stove, I lit on my feet and stayed on my feet. When I got down, I was so mad I don't know whether I was weak when he pulled me off the first time. Nor the second time. Nor the third time. I forbade them at the very start to take the stove after they got in the kitchen, unless they had papers for that purpose. They had not carried out any portion of the stove at the time I jumped up onto it, and had not moved the stove at all. They took the stove pipe off while I sat upon it.''

This is sufficient testimony to show the theory of the plaintiff and the defendant as to what transpired at the time it is claimed that the plaintiff was injured.

Upon this state of the record, the defendant asked the court to submit to the jury the following instructions:

Paragraph 1. If you find from the testimony that the plaintiff gave her consent that the defendant and the witness G. W. McFarland enter the house, and she thereafter told them they might remove the stove, and you further find that they did in good faith move said stove from its position in the room, take down the pipe, and carry certain portions of the stove out of the house and into the street with her full knowledge and consent, then, in such case, the defendant and said McFarland had the right to remove said stove from the house where plaintiff was living and to take the same away, even though you further find that the plaintiff objected to their removing the main part of the stove after part had been conveyed into the street. But you are further instructed that the defendant had no right to use any other or greater force in removing said stove than was necessary, acting as a reasonable and prudent man, to remove the same. Nor was the

defendant justified in using such force, as against the plaintiff, as to cause her any serious injury; but if she obstructed his work in removing said stove, after having consented to its removal as hereinbefore stated, then the defendant had the right to use such force as was necessary to remove said stove, as long as he committed no injury to the plaintiff.

Paragraph 2. You are further instructed that, according to the terms of the contract of purchase, the witness McFarland, or any one acting for him and under his direction, upon default in payment according to the terms of contract, had the right to take possession of said stove wherever the same might be found, in a peaceable manner, and if you find from the testimony that the plaintiff surrendered said stove into the possession of said McFarland and this defendant, and they took possession thereof with the full knowledge and approval of the plaintiff, then and in that case they had a right to retain possession thereof and to remove the same, if they could and did so remove it without personal injury to the plaintiff.

Paragraph 3. You are further instructed that if the plaintiff gave her full consent that said stove be removed, and surrendered the same willingly into the possession of said defendant, and said McFarland, then and in such case, they were not required to stop or desist in removing the stove simply because plaintiff told them she had changed her mind or told them that they could not remove the same, if you find from the testimony that she did so tell them.

The court gave no instructions embodying the thought therein expressed, but told the jury that, by the terms and conditions of the contract (hereinbefore set out), the firm of Kerberg & McFarland, by reason of the defaults made by the plaintiff in the payment of the sum therein agreed to be paid, was entitled, as a matter of law, to the possession of the stove in question, and that they would have a right, at that time, to recover the possession thereof in a proper action instituted by them for that purpose, upon refusal of plaintiff to surrender the possession of the same peaceably and without suit. But they had no right, under the law, to enter the plaintiff's home, without legal process, and take the same forcibly from

her possession, without her consent and against her objections
and protest; if they did so do, and if they entered for that pur-
pose and attempted to take the same without legal process and
over her objections and protest, she had a right, under the
law, to defend her possession against their unlawful acts, and
to require them to leave her home, and use all proper and
reasonable means to expel them therefrom, if they refused
to go.  And if, after the defendant and the said McFarland
entered plaintiff's home, she at first consented to their taking
the stove, and shortly afterwards revoked such consent and
forbade them to take the same without legal process, before
they had removed it from the room where it was standing,
then they had no right to continue to remove the same forcibly·
and against her will, except under legal process.  And if she
then sat upon the stove to prevent them from taking and
removing the same, and the defendant thereupon assaulted
and rudely seized her by the arms and wrists, and forcibly
removed her from her position, then such assault was an un-
lawful one, and the defendant will be responsible for any
injuries resulting therefrom.  In other words you are in-
structed, as a matter of law, that the seller or lessor of per-
sonal property, under a contract like the one in question, has
no right, on account of default in the payments provided in
contract, to forcibly take the property from the possession of
the purchaser or lessee, over his objections and against his
will, without first procuring a legal process or writ for that
purpose; and that if, in attempting so to do, he unlawfully
assaults and inflicts any injury, however slight, upon the per-
son of the purchaser or lessee, he will be responsible in dam-
ages on account thereof.  He may only recover possession of
the property, without the aid of legal writ or process, when
he is able to do so peaceably and with the consent or approval
of the party in possession, and in so doing he has no right to·
assail or use any physical violence, however slight, upon the
person of the party from whom he seeks to recover possession,

and, if he does do so, he is responsible for the injury or indignity suffered by the party assailed as a result thereof.

The instructions given by the court ignore the thought contained in the instructions asked to the effect that if McFarland and the defendant entered the house, as they had a right to do under the written contract, without objection from the plaintiff, for the purpose of removing the stove, and she thereupon told them they might remove the stove, and they, in good faith, moved the stove from its position in the room, took down the pipe, and carried out portions of the stove, from the house into the street, and they did this after she had surrendered the stove into their possession, she could not then revoke the license given and recapture the stove by force, and, if she then attempted to revoke the license and recapture the stove by force, they had a right to resist her in her efforts and maintain their possession, and, in so doing, had a right to use such force as was reasonably necessary to do so. Or, in other words, that if the plaintiff consented that the defendant and McFarland might take possession of the stove, after they had entered her home for that purpose, and consented that they might remove the stove from her house, and they did take possession of the stove and were in the act of removing it, though they had not removed it all from the house at the time, she could not then withdraw her consent and forcibly recover from McFarland and the defendant the possession thus given them, and, if she attempted to do so, they had a right to defend their possession by the use of such force as was reasonably necessary to maintain the same, and to remove the stove from her house.

It is apparent from this record that McFarland and the defendant, acting for McFarland, had a right to enter plaintiff's home, and did enter it, under the license given them in the written contract. It is apparent that they had a right to the possession of the stove under the written contract. It follows that, the right to enter having been given, the right of possession having been given, the right to take possession

having been given under the written contract, if possession had been actually taken by McFarland and the defendant, with the consent of the plaintiff, they were in a position to defend that possession by the use of such force, but only such force as was reasonably necessary to maintain it.

It will be noticed that the defendant's testimony tends to show that they did not use any personal violence towards the plaintiff, but simply removed her from the position she had assumed upon stove.

Each party to a suit is entitled to have his theory of the case submitted to the jury, under proper instructions, whenever there is evidence before the jury which justifies its submission.

The court, in its instructions to the jury, recognized the fact, and so stated the fact to be, that McFarland, as a matter of law, was, at the time he attempted to take the stove, entitled to its possession, and had a right to recover its possession, but said they had no right, under the law, to enter plaintiff's home without legal process, and forcibly take the same from her possession without her consent and against her objections; that if they entered for the purpose of taking or attempting to take, without legal process, over her objections, she had a right, under the law, to defend her possession against their unlawful acts, and to use all proper means to expel them from the house if they refused to leave; that even if she did consent, at first, to their taking the stove and afterwards revoked such consent and forbade them to take it without legal process, before they had actually removed it from the room, they had no right to remove it against her will, except upon legal process. Nowhere did the court say to the jury that the defendants had the right to enter the premises for the purpose of removing the stove; that having entered for that purpose, if she consented that they might take possession of and remove it, and they did thereupon actually take possession for that purpose, she would have no right to revoke her consent and seek to recover possession by force, and that, if she

did so attempt, the defendants had a right to meet force with force, provided they used no more force than was reasonably necessary to maintain such possession.

It is well settled that the mere right to the possession of property does not entitle the party to take the same from the one in the actual rightful possession by force or violence. But to recover possession, under such circumstances, resort must be had to legal proceedings. But where one has the actual right to the possession and obtains possession of the property to which he had the right of possession, from the one actually in possession with his consent, he may thereafter maintain his possession by the use of force. See *Yale v. Seely*, 15 Vt. 221.

If one attempts to take or takes another's property from his possession, without right and against his will, the owner or person in charge may protect his possession, or retake the property, by the use of necessary force. He is not bound to stand by and submit to wrongful dispossession when he can stop it, and he is not guilty of assault, in thus defending his right, by using force sufficient to prevent the property from being carried away. The converse of this proposition is true: If one has intrusted his property to another who afterwards, honestly, though erroneously, claims it as his own, or claims the right to the possession, the real owner has no right to retake it by force or violence. The law will not permit or tolerate that persons take the settlement of conflicting claims into their own hands. The law gives the right to defend possession of property, but not the right to redress for the wrongful taking. The general rule is that a right of property merely, joined with right of possession, will not justify the owner in committing an assault and battery upon the person in possession, for the purpose of regaining possession, although the possession is wrongfully withheld. *Barnes v. Martin*, 15 Wis. 240 (82 Am. Dec. 670) ; *Bliss v. Johnson*, 73 N. Y. 529.

It has been further held that if the property was rightfully in the possession of another than the owner at first, and

such possession had been surrendered to the owner, the owner had the right to maintain that possession, after it was so acquired, against every one else. See *Johnson v. Perry*, 54 Vt. 459.

The court, in the instant case, recognized the right of the party in possession to maintain his possession, by the use of such force as was reasonably necessary to do so, and applied the rule to the plaintiff in this case and her possession, but neglected to inform the jury that, if she had surrendered her possession to the defendant, the defendant had the same right, after obtaining possession, to defend his possession by the use of such force as was reasonably necessary to maintain it.

In this we think the court was in error, and, for the errors pointed out, the case is *Reversed*.

LADD, C. J., and DEEMER and WITHROW, JJ., concur.