CLARA KUEHN, as administratrix of estate of Betty Kuehn, deceased, appellee, v. NOVALEEN JENKINS et al., appellants.

No. 49796.

(Reported in 100 N.W.2d 610)

January 12, 1960.

Rehearing Denied April 8, 1960.

Archerd, Birdsall & Draheim, of Clarion, and Alan Loth, of Fort Dodge, for appellants.

McCarville & Bennett, of Fort Dodge, for appellee.

Thompson, J.—Betty Kuehn, a 21-year-old single woman, was instantly killed in a collision between the automobile in which she was a passenger and a two-ton truck owned by the defendants Novaleen Jenkins, Henry L. Jenkins and Jenkins Trucking and Feed Company, and operated by the defendant Claude Junior Dishman. The collision occurred about 6:30 a.m. July 26, 1959, at a street intersection in Clarion, Iowa. Her

mother, Clara Kuehn, as administratrix, brought an action for damages to the daughter's estate. At the same time Clara Kuehn, the driver of the automobile in the collision, brought an action against the defendants in her own behalf for injury and damages. The cases were tried together, resulting in a verdict and judgment for plaintiff herein in the sum of $25,000 in her action as administratrix. Defendants appeal. In the companion case the jury verdict of $5000 for the mother was set aside by the court and she appealed. See Kuehn v. Jenkins, 251 Iowa 557, 100 N.W.2d 604. The appeals were handled separately, although both refer to a single record. In this opinion we consider only the defendants' appeal in the administratrix' case.

First Avenue in Clarion runs east and west, and Eighth Street runs north and south. Eighth Street was 18 feet 10 inches wide, and the blacktop between the gutters on First Avenue was 22 feet 6 inches wide. There is a sharp dispute as to where in the intersection the collision took place, which, because of its importance, requires a somewhat detailed examination of the testimony.

Mrs. Kuehn, whose residence was on the southeast corner of the intersection, testified that she backed her car into Eighth Street and headed north toward the intersection with First Avenue at about eight or ten miles per hour. She was taking the decedent to the telephone office where Betty was employed. It was only 109 feet from the center of the east and west Kuehn driveway to the intersection center of First Avenue.

Mrs. Kuehn testified: "When I started I straightened it out, heading north * * *. There were no cars or vehicles on the street, and I started. I could see down the street almost a block. As I moved the car north I got to a point where I could see beyond the house [57 feet 9 inches from curb]. Then I looked to the right and looked to the left. No cars were approaching. When I got even with the sidewalk [about 16 feet from curb], Betty yelled, 'Look out, Mom,' and here the truck was right there. I put on my brakes. When I came to a stop I was on the south side of the street, not on the other side. My car had not crossed the center line of the intersection. My car was not moving at the time of the accident because I applied the brakes and

was at a dead stop when the truck hit us. He was doing at least 35 to 40 miles an hour, maybe more." She further testified defendant Dishman "was about three quarters * * * down the street on the south side of the street, a quarter past the middle of the street at least. In place of being on the north side of the street * * * he was half way over on the south side. I was on * * * my side of the street. There were no other vehicles moving, standing or parked on the street east of Eighth; that street was entirely clear on the north side. The left hand of the front, like the front fender of the truck, came into the right front fender of my car." Thereafter she lost consciousness, and the next thing she remembered she picked herself up out in the middle of the street. She did not "remember what course my car took from the moment of the impact. * * * Betty was lying next to the curb on the north side of Eighth Street right on the corner of First Avenue * * * facing east."

Photo Exhibit 4 shows the intersection along with the position of the vehicle when they came to rest after the collision. The Kuehn car, except for the left wheels, was entirely on the parking facing east at the southwest corner of the intersection. The truck with a stock body was facing west, next to the north curb of First Avenue about 211 feet west from the center of the intersection involved. There were black tire skid marks in the east lane of Eighth Street extending about 22 feet 11 inches, which witnesses said were made by the Kuehn car. They appear in Exhibit D, which also shows sharp curving tire marks to the west and several wet spots which were said to be from radiator fluid. Here again there is a dispute. Mr. Merle Fletcher, testifying for plaintiff, said: "I saw some skid marks on the pavement coming from the south up part way across the intersection", and in answer to the question, "Can you tell us where the north end of those skid marks ended with reference to the middle of the street?" he said, "Well, I would say it was a foot or two south of the center of the street." (Referring to First Avenue.)

There were also tire marks on First Avenue which extended from the truck back to the intersection. Exhibit 21 shows them curving first to the south lane, then to the north lane, and then

at the intersection near the debris they disappear. The defendant Dishman explains them by saying he was knocked from his seat behind the wheel and temporarily lost control of the truck after the collision. While he admits that he did not see the Kuehn car he said: "I was on the north side of the street. At the moment of impact my truck swerved to the north, I don't know how far. My truck was going between 20 and 25 miles per hour because that is as fast as the truck can go in that gear. Couldn't possibly go over 30 miles an hour in the gear on the low side of third. * * * The truck was not running wide open in that gear. * * * The fastest gear is the fourth which will go probably 40 miles per hour." There was other testimony tending to confirm his claim that the truck had been driven in third gear on the low side.

The physical facts, as related by the witnesses and disclosed by the exhibits, bear out the testimony that these vehicles came together with considerable force. In addition to throwing a 3700 pound automobile completely around and depositing it over 35 feet from the place of contact, the force smashed in the right front fender, flattened the right front wheel and assembly, bent in the frame in the right front, smashed the left front head lamp and grill, and as the heavy rear wheel of the truck apparently climbed over the rear trunk lid, smashed the rear window and bent in the roofing. Exhibits A, B, 17, and 18 disclose much of these damages. The car was a total wreck. On the other hand, the truck had a broken left head lamp, a dent in its fender and scratch marks on the left side of the body. The radiator was ruined and the left door jammed. Otherwise the truck was not seriously damaged.

Except for Mrs. Kuehn and the defendant Dishman there were no eyewitnesses to the collision, but the neighbors testified they were awakened by the "loud crash." Mr. Fletcher said, "I thought it was a freight train." Mrs. Fletcher said she was aroused by "a sound like an explosion." Tillie Amsbaugh said, "It was a terrible crash. I thought that a car had run into the trees on my corner." Mr. John Schmidt, who lived on the third lot west of the intersection said, "It sounded like two railroad

cars bumping together. * * * I had been asleep, I was aroused from sleep."

The trial court submitted to the jury three pleaded charges of negligence against defendants: (1) Failure of defendant Dishman "to maintain a proper lookout for other traffic in the lawful use of said street"; (2) "in operating said truck at a speed in excess of 25 miles per hour in a residential district in said city"; (3) "in failing to yield one half of the roadway to the automobile in which the plaintiff's decedent was a passenger."

The learned trial court took the position that there was substantial evidence to sustain a jury finding in favor of plaintiff on all three grounds, and we agree.

Defendants assign a number of alleged errors which they group into four divisions. They are: (1) Submitting grounds of negligence not sustained by evidence; (2) errors in the instructions; (3) an unfair trial, and refusal of instructions to palliate it; and (4) an excessive verdict which the trial court refused to reduce and to eliminate the mother's half because of her concurring negligence as a proximate cause of the daughter's death.

I. The court did not err in overruling defendants' motion to direct a verdict based on claimed insufficient evidence. Relative and material evidence and justifiable inferences favorable to the plaintiff must, of course, be accepted at their face value in determining whether the case is submissible to a jury. In considering defendants' claim the testimony must be viewed in the light most favorable to plaintiff. Soreide v. Vilas & Co., 247 Iowa 1139, 1143, 78 N.W.2d 41, 44. The rule is applicable to both specifications of defendants' negligence and plaintiff's freedom from contributory negligence. Hackman v. Beckwith, 245 Iowa 791, 802, 64 N.W.2d 275, 282; Mongar v. Barnard, 248 Iowa 899, 904, 82 N.W.2d 765, 775; Law v. Hemmingsen, 249 Iowa 820, 824, 89 N.W.2d 386, 391, and cases cited. When this is done we think evidence of the defendant Dishman's negligence sufficient for submission to the jury.

II. The question of whether the pleaded specification of failure to keep a proper lookout should have been submitted

may be shortly answered. Clara Kuehn, the driver of the car in which Betty Kuehn was riding, testified that she stopped on the south side of the intersection, and that the defendants' truck struck her there, which means it must have been driven on the left-hand side of the street at that point. It was proceeding west on First Avenue, so that its proper position was on the north side of the street as it crossed the intersection. This evidence was disputed; but there was without doubt a jury question, made by Clara Kuehn's testimony and strengthened by evidence as to skid marks.

Under these circumstances it is evident, if the jury believed Mrs. Kuehn, either that Dishman did not see the Kuehn car, which means he was not keeping a proper lookout, or that he willfully drove into it. Motorists do not ordinarily drive on the left-hand side of the roadway against traffic in sight there if they see it; and if they do so drive, a fair inference that they have not been properly watchful arises. Hackman v. Beckwith, 245 Iowa 791, 802, 803, 64 N.W.2d 275, 282; Pazen v. Des Moines Transportation Co., 223 Iowa 23, 27, 28, 272 N.W. 126, 129. There is no presumption that an injury is willfully caused by driving on the left-hand side of the road. The question of lookout was clearly one for the jury.

III. Complaint is made of the court's instruction on lookout, which we quote: "By a 'proper lookout' is meant that lookout which would be maintained by an ordinarily reasonable and prudent person under the same or like circumstances. 'Proper lookout' means more than merely to look straight ahead or more than seeing the object. It implies being watchful of movements of the driver's own vehicle in relation to the things seen and which could have been discerned or seen in the exercise of ordinary care." We find nothing objectionable in this instruction. In Law v. Hemmingsen, 249 Iowa 820, 830, 89 N.W.2d 386, 394, we quoted with approval from Pazen v. Des Moines Transportation Co., supra, 223 Iowa 23, 30, 272 N.W. 126, 130: "The term 'proper lookout' means more than to look straight ahead, or more than seeing the object. It implies being watchful of the movements of his own vehicle as well as the movements of the thing seen."

So in Becker v. Waterloo, 245 Iowa 666, 673, 63 N.W.2d 919, 923, we said: "Proper lookout means being watchful of the movements of one's own vehicle as well as the other things seen or seeable, and involves the care, prudence, watchfulness and attention of an ordinarily careful and prudent person under the circumstances." See also Paulsen v. Haker, 250 Iowa 532, 537, 95 N.W.2d 47, 50. Measured by these definitions, the instruction given was adequate and proper.

IV. The assigned error which is predicated upon the contention there was insufficient evidence to warrant the submission of the specification of improper speed is without merit. Mrs. Kuehn testified that at the time of the collision defendants' truck was traveling "35 to 40 miles an hour, maybe more." Without considering the evidence of the severity of the crash and the damage done by it, this testimony in itself made a jury question on speed. Admittedly the accident occurred in a residential zone where the maximum permitted speed was 25 miles per hour.

V. So with the contention there was not enough evidence to permit submission of the issue of driving on the wrong side of the street. Mrs. Kuehn's testimony that the truck was on its left-hand, or south, side of the street when it struck her is definite and positive. It is supported to some extent by evidence of skid marks of her car. A jury question was clearly made.

VI. The defendants further predicate error upon the refusal of the trial court to give their Requested Instruction No. 4, which we quote:

"4. It was the duty of Clara Kuehn to yield the right of way at this intersection to any vehicle approaching from the East so as to constitute a hazard, or so that there is danger of collision; and to use reasonable care to look at reasonable times and places for the approach of such vehicles and observe the approach thereof if visible from reasonable observation. Her failure to yield the right of way to the defendant's truck if it was so approaching that it would constitute a hazard, or would make a danger of collision which would be apparent to a reasonable person keeping a reasonable lookout and seeing what was reasonably visible, would be negligence as a matter of law."

A proper exception was taken: *"To Instruction 7 [on lookout] and the refusal to give requested Instruction 19, and to the refusal to give requested Instruction 4, and to instructions as a whole in respect of the defendant's duty to lookout:* Because the defendant is entitled to have some instruction advising the jury of the truck's right of way over the car, so as to tell them on what he might gauge or limit his lookout and enable the jury to decide whether what he did in that regard was reasonable; and the request was proper and is not covered." (Italics supplied.)

The court at no point in its instructions gave any instruction on the directional right of way. We set out Code section 321.319:

"Approaching or entering intersections. Where two vehicles are approaching on any public street or highway so that their paths will intersect and there is danger of collision, the vehicle approaching the other from the right shall have the right of way."

In fact, the court somewhat aggravated its failure by telling the jury, in its instruction No. 11, that "you are instructed that the said Clara Kuehn was under the same legal duty to exercise the same standard of care and caution as was required of the defendant Dishman, and that the said Clara Kuehn was duty bound to observe the provisions of law in regard to the operation of motor vehicles in so far as such provisions were applicable to them or each of them."

The first part of this instruction as quoted above places the parties on the same plane in regard to the duty to exercise care. It is true each was bound to use the care of an ordinarily prudent person under the circumstances; but, as we said in Peterson v. Union Motor Sales Co., 245 Iowa 1337, 1341, 66 N.W.2d 496, 499, while the standard required is the same, the conduct necessary to meet that standard is not always so. It varies with the circumstances. So in the case before us, while each party had a duty to exercise due care, the acts required to meet it were not the same.

Section 321.319, supra, comes into the picture at this point. The conduct of the driver approaching and entering an

intersection from the left should be governed by this section; and so with the driver on the right. It is not an absolute decree of immunity to the right-hand driver; but it has weight.

██ VII. We need not stop to determine whether Requested Instruction No. 4 was a perfect statement of the law. The defendant driver was on the right, the driver of the Kuehn car on the left. This fact was called to the attention of the court, and it made known the desire of the defendants to have an instruction on their rights under section 321.319. This was sufficient. We have repeatedly and recently so held. Lehman v. Iowa State Highway Comm., 251 Iowa 77, 86, 99 N.W.2d 404, 409, contains a thorough discussion of the point, with citation of numerous authorities. We shall not take the time and space needed to again review them.

VIII. The trial court instructed fully on the plaintiff's theory of the case, but refused to instruct on what must have been a highly important part of the defense. The directional right of way was a substantial matter to defendants. Whether it was the most important point in their favor we need not determine; it was certainly one clear item. There is no claim that any contributory negligence of Clara Kuehn, the driver, was imputable to the decedent, the passenger. But it was proper for the defendants to show, if they could, that the negligence of Clara Kuehn was the sole proximate cause of the collision. The directional right-of-way statute was surely material in this connection; and by refusing to instruct upon it the court committed prejudicial error.

██ The defendants' answer in the case was in the nature of a general denial. It was not necessary for them to plead that the injury and damages were caused solely by the negligence of a third party—in this case, Clara Kuehn. The burden was at all times on the plaintiff to show that some negligence of the defendants was the sole or at least a concurring proximate cause. Anything that negatived this, such as that the fault was entirely that of a third party, was proper to be shown under a general denial, and is an issue in the case if there is evidence to support it. We have often so held.

In Brown v. Rockwell City Canning Co., 132 Iowa 631, 639,

110 N.W. 12, 14, we said: "The contention for appellant that the pleadings raised no issue as to whether the Globe Company was an independent contractor is answered by the suggestion that the defendant denied its liability, and might under such a denial, show that the negligence, if any, was the negligence of some other responsible party."

See also Overhouser v. American Cereal Co., 128 Iowa 580, 583, 105 N.W. 113, 115, and Chadima v. Kovar, 168 Iowa 385, 391, 150 N.W. 691, 693. In the latter case we reversed because the trial court had erroneously placed the burden of proof upon the defendant to show that the wrongful act was that of a third party.

The general rule is laid down in 65 C. J. S., Negligence, section 197, page 922, thus: "The fact that a co-defendant was an independent contractor may be shown under a general denial and need not be specially set up; *and this is also true of a defense that the injuries were due to the negligence of a third person * * *.*"   (Italics supplied.)

IX. The trial court seems to have recognized this rule, because it did in both its Instructions Nos. 11 and 12 refer to the thought that if the negligence of Clara Kuehn, or something other than the claimed negligence of the defendant Dishman, was the sole proximate cause of the collision, plaintiff could not recover. To Instruction 12 the defendants took a pertinent exception, which we set out:

"*To Instruction 12:* Because: (a) It does not include any instruction or guide as to the negligence of Mrs. Kuehn being the independent or intervening cause; and does not state under what circumstances that would make it the sole cause, nor does any other instruction so state; but the evidence at least makes this a question for the jury and requires the court to instruct on that subject."

But, having so instructed, the court gave the jury no guide to the conduct required at an intersection, such as the one at which the accident occurred. The directional right of way was an important element in defendant's case. It was an issue in the case. It bore directly upon the question of the negligence of Clara Kuehn being the sole proximate cause. On its own

motion, the court might well have instructed on section 321.319, supra. Whether it would have been required to do so in the absence of a request, we shall not determine; a request was made and ignored.

The result was a failure to instruct upon a vital issue in defendants' case. We have so often said that the theories of both parties to a lawsuit, so far as they are supported by substantial evidence, must be submitted, and that it is prejudicial error to fail to do so, that citation of authorities seems needless. But see Hutchinson Purity Ice Cream Co. v. Des Moines City Railway Co., 172 Iowa 527, 154 N.W. 890; First National Bank v. Cook, 171 Iowa 41, 153 N.W. 169; and Biggs v. Seufferlein, 164 Iowa 241, 145 N.W. 507, L. R. A. 1915F 673.

X. The right-of-way statute was also material upon the question of lookout. We think this was called to the court's attention by Requested Instruction No. 4 and the exceptions to the court's refusal to give it and to the instructions as a whole, set out above. The exceptions point out that the defendants were entitled to have the directional right of way defined so that the jury would know "on what he [defendant's driver] might gauge or limit his lookout and enable the jury to decide whether what he did in that regard was reasonable * * *." The standard of care was the same for both parties, but the acts and conduct necessary to meet it were not.

The directional right-of-way statute places a greater burden upon the driver on the left in keeping a lookout and seeing what is to be seen. We have held in a series of cases that the driver approaching an intersection is negligent as a matter of law if he does not look to his right and see what is in plain sight, absent any obstruction of vision or excessive speed or absence of lights after nightfall of the vehicle on his right. Olson v. Truax, 250 Iowa 1040, 1047, 97 N.W.2d 900, 905; Peterschmidt v. Menke, 249 Iowa 859, 864, 89 N.W.2d 152, 156; Jacobson v. Aldrich, 246 Iowa 1160, 1170, 68 N.W.2d 733, 739; Hewitt v. Ogle, 219 Iowa 46, 49, 50, 256 N.W. 755, 756. On the other hand, we have said that the driver on the right is not guilty of negligence so that a directed verdict against him is

permitted if he does not look to his left at all. Roe v. Kurtz, 203 Iowa 906, 907 to 910 inclusive, 210 N.W. 550; Hutchins v. LaBarre, 242 Iowa 515, 533, 47 N.W.2d 269, 279, 280.

These cases illustrate the difference in the conduct of the drivers on the left and right respectively, required to meet the standard of care of the ordinarily prudent person in keeping a lookout. But the defendants were denied an instruction which would have told the jury of this difference. As we said in Law v. Hemmingsen, 249 Iowa 820, 826, 89 N.W.2d 386, 391, "It is the court's duty to instruct with reasonable fullness on the issues, and a mere abstract definition of a term, having no application to the particular controversy, is insufficient. The instructions afford the only guide the jury has for correct application of the law to the facts."

In the case at bar the court's instruction that the parties were under the same legal duty to exercise the same standard of care, while correct if considered only in the broad view that each was bound to use ordinary and reasonable care, was in fact misleading if not connected with the further instruction defining the conduct required of the left- and right-hand drivers at intersections. It is difficult to conceive of an intersection collision case in which an instruction on the directional right-of-way statute would not be required to define the rights of the parties and the conduct incumbent upon each. But if there be such cases, this is not one of them.

XI. The defendants, by proper procedures, made the contention that since Clara Kuehn, the driver of the car in which decedent was riding, was also her mother and would be entitled under our statutes to one half of any amount recovered in this action, her negligence would bar recovery of that part of the damages which would accrue to her own benefit. The trial court disagreed. Passing the point that negligence of Clara Kuehn has not yet been proven, we think the claim is lacking in merit. Our statutes which provide for survival of actions after the death of the person entitled, so far as material here, are Code sections 611.20, 611.22 and 635.9. So far as important here, they have been a part of our law for many years, and sections 611.20 and 611.22 have been always construed by us as

732

being survival statutes. Section 635.9 is a provision for disposal of damages recovered for wrongful death. We set out each of these sections:

"611.20 Actions survive. All causes of action shall survive and may be brought notwithstanding the death of the person entitled or liable to the same."

"611.22 Actions by or against legal representatives—substitution. Any action contemplated in sections 611.20 and 611.21 may be brought, or the court, on motion, may allow the action to be continued, by or against the legal representatives or successors in interest of the deceased. Such action shall be deemed a continuing one, and to have accrued to such representative or successor at the time it would have accrued to the deceased if he had survived. If such is continued against the legal representative of the defendant, a notice shall be served on him as in case of original notices."

"635.9 Damages for wrongful death. When a wrongful act produces death, damages recovered therefor shall be disposed of as personal property belonging to the estate of the deceased, but if the deceased leaves a husband, wife, child, or parent, it shall not be liable for the payment of debts."

We have said our statutes are survival statutes in Fitzgerald v. Hale, 247 Iowa 1194, 1197, 78 N.W.2d 509, 511; Gardner v. Beck, 195 Iowa 62, 67, 68, 189 N.W. 962, 965; M'Coullough v. Chicago, R. I. & P. Ry. Co., 160 Iowa 524, 528, 142 N.W. 67, 70, 47 L. R. A., N. S., 23. Survival acts are distinguished from those statutes patterned after Lord Campbell's Act, Stat. 9 and 10, Vict., ch. 93, which provide that the action is maintained for the benefit of designated persons. As to the latter the contributory negligence of a beneficiary is generally held to be a defense. Restatement, Torts, section 493; Annotation, 2 A. L. R.2d 785 et seq., and authorities there compiled.

But under survival acts contributory negligence of a beneficiary is not a defense, under the general rule. The distinction is pointed out and the difference between Lord Campbell's Act and statutes which are modeled upon it, and survival

acts like our own sections 611.20 and 611.22, above set out, is made clear in Gardner v. Beck, supra, where it is said: "Under our statute, also, the administrator holds title to the cause of action for the benefit of the *estate*, though a certain class of beneficiaries of the estate are protected and given preference by an exemption statute [now section 635.9, supra]."

The question is discussed and the same distinction made in Oviatt v. Camarra, 210 Ore. 445, 311 P.2d 746, 749, 750, 751, with authorities cited; in Davis v. Margolis, 108 Conn. 645, 144 A. 665; and Wolf v. Lake Erie & Western Ry. Co., 55 Ohio St. 517, 45 N.E. 708, 36 L. R. A. 812.

It is true that the distinction between a statute which provides the action shall be brought for the benefit of certain named persons, and one which says it is had for the benefit of the decedent's estate, with a following provision that the avails of the action shall go to substantially the same class of beneficiaries exempt from debts is somewhat tenuous. In either event, it is possible a beneficiary, if permitted to take, will be profiting by his own negligence. But we have established the rule in Iowa, and the difference is generally recognized in other jurisdictions. We are not disposed to change it.

Iowa cases generally cited in support of the rule that under survival statutes negligence of a beneficiary of the decedent's estate is not a defense to an action for damages for his wrongful death are Bradshaw v. Frazier, 113 Iowa 579, 85 N.W. 752, 55 L. R. A. 258, 86 Am. St. Rep. 394, and Wymore v. Mahaska County, 78 Iowa 396, 399, 43 N.W. 264, 265, 6 L. R. A. 545, 16 Am. St. Rep. 449. It is true these cases seem to turn largely, if not altogether, upon the question of whether the negligence of parents is to be imputed to a minor child. But there is this language in the Wymore case: "It may be that a recovery in this case will result in conferring an undeserved benefit upon the father, but that is a matter which we cannot investigate." In the Bradshaw case it was held that the negligence of a parent, beneficiary of the estate, was not a defense in an action for wrongful death of a child. We said (page 583 of 113 Iowa): "It is claimed there was contributory negligence on the part of

the parents of the deceased girl, and on the part of the relatives with whom she remained for a few days after the ejectment. This is not a defense in this case." Wymore v. Mahaska County, supra, was cited as authority for this holding.

These cases were cited by the Oregon Supreme Court in Oviatt v. Camarra, supra; they were discussed and it was determined that they support the rule that court followed. They are not entirely satisfactory as authorities for the rule that contributory negligence of a beneficiary is not a defense in an action for wrongful death, because they seem to turn largely upon another point, and the question now before us was not discussed or analyzed, and was shortly disposed of, somewhat dogmatically, in each. But we find additional authority in Romano v. Capital City Brick & Pipe Co., 125 Iowa 591, 600, 101 N.W. 437, 440, 68 L. R. A. 132, 106 Am. St. Rep. 323. This was an action for wrongful death brought by an administrator, and one of the defenses urged was that the beneficiaries of the decedent's estate were nonresident aliens and so not entitled to the benefits of our survival statutes. This court said: "That this cause of action survived his death, and could be made the basis of recovery by his personal representative, is expressly stated by the statutory provisions; and it is also expressly stated that the damages recovered in such an action are to be disposed of as a part of his estate. *Now, we cannot see how, for the purposes of this action, it is necessary to determine who are his heirs, and as such heirs, will be entitled to distributive shares in his estate, whatever it may be.*" (Italics supplied.)

We conclude, on the authority of our own precedents and the rule cited from texts and encyclopedias and other jurisdictions, that the point sought to be made by the defendants as discussed in this division is not well taken.

XII. Other errors assigned deal with claimed misconduct of counsel. While some of the things said in the opening statement and in final argument might well have been omitted, in view of the necessity of a new trial we make no decision on the point. So with the claimed excessiveness of the verdict, since it must be set aside on other grounds, we do not find it necessary

to determine the question. Because of the errors pointed out in Divisions VI, VII, VIII, IX, and X the case is reversed and remanded for a new trial.—Reversed and remanded.

BLISS, GARFIELD, OLIVER, and THORNTON, JJ., concur.

LARSON, C. J., and HAYS, PETERSON, and GARRETT, JJ., dissent.

LARSON, C. J. (dissenting)—I must respectfully dissent from the views expressed by the majority in Divisions VI, VII, VIII, IX, and X of the opinion. I feel the trial court was not only fair but correct in its instructions, and that defendants' Requested Instruction No. 4 and their objections to Instruction No. 7 as a basis on which to predicate reversible error have no merit.

The majority seems possessed with the idea that the trial court was unfair; that it "instructed fully on the plaintiff's theory of the case, but refused to instruct on *what must have been a highly important part of the defense.*" (Emphasis supplied.) Thus it feels free to speculate as to what was "highly important" to defendants. As a matter of fact, few or no evidentiary facts tend to support that conclusion.

The clear issues in plaintiff's case are predicated on defendant's negligence in failing to keep a proper lookout, excessive speed, and failure to drive on his own right-hand side of the street. The so-called important issue as to intersection right of way was not raised by plaintiff, and, in fact, I do not find that her theory of the case included such an issue. According to the pleadings and proof, this was not an intersection accident, for unless the Kuehn car entered the northeast quarter of the intersection of First Avenue and Eighth Street, Clara Kuehn had no duty to yield to a vehicle approaching from the east and was not acting in violation of section 321.319, Code, 1958. As I view it, if, as Clara contends, the defendant's truck struck the Kuehn automobile in the southeast quarter of the intersection, where she had a right to be and the defendant had no right to be, the issue as to who had the right of way at the intersection would not be involved.

The majority says flatly that "the directional right of way was a substantial matter to defendants." Let us see how substantial they considered it. The defendants' answer did not set up the fact that its truck had the right of way, nor did they affirmatively allege that the negligence and sole proximate cause of this accident was that of the driver of the car in which plaintiff's decedent was riding. The answer was only a general denial. It is true defendants attempted to show by plats that the Kuehn car slid across the First Avenue center line in the process of stopping. Even that evidence only tended to substantiate the fact that Clara Kuehn, on discovery of Dishman's wrongful approach from the east, was yielding the right of way to him.

Under these circumstances it is a harsh and extraordinary extension of the doctrine that if defendants' counsel suggests the need for an instruction on a rather obscure or remote issue which may possibly be included in a general denial, and offers some slight evidence thereon, the trial court must at once recognize the issue and give a correct and proper instruction thereon. Such should not be the rule, and under the better authorities I think it is not.

Counsel, when asking a refined or specific instruction on such a point he believes vital to his case, should be and I think is required by the better rule to request a correct and proper instruction on that issue. Upon what issue did counsel desire an instruction? It is inconceivable that learned and experienced counsel herein would not know how to draft a clear and correct instruction on directional intersection right of way. Obviously that was not his purpose in Requested Instruction No. 4. To me the request appears to be for an instruction to the jury that, due to defendant driver's duty to yield the right of way to traffic approaching from his right, he had performed his duty when he looked only to his right as he approached the intersection, and therefore was not negligent in failing to see the Kuehn car approaching from the left.

The majority obviously is not sure whether defendants were desirous of an instruction on right of way at an intersection or on lookout, so it attempts to justify and hold proper both requests. The result seems to require that trial courts

examine ambiguous, uncertain, and incorrect instructions to see if they may possibly raise some obscure issue upon which a proper instruction must be given.

Such a rule, I feel, is quite unsound. The general rule most liberally stated is that courts *may* give refined or specific instructions that are clear, correct and proper pronouncements of the law on an involved defensive issue resulting from general denials. They are not compelled to do so, nor has that been our usual practice. See cases in Third Decennial Digest, Volume 26, Trial, Key 260.

Generally speaking, instructions given by the court must fairly and reasonably present no more than issues joined by the pleadings and presented by the evidence. This is true although in submitting an instruction the propositions of law be correctly stated, for any instruction not pertinent to the evidence and issues made by the pleadings would be improper, if not prejudicial. Reid's Branson Instructions to Juries, Third Ed., Volume 1, sections 115, 117, pages 318 to 323; Davis v. Hansen, 187 Iowa 583, 586, 172 N.W. 1, 2; Waldman v. Sanders Motor Co., 214 Iowa 1139, 1149, 243 N.W. 555.

Usually the instructions must be within the purview of the issues raised by the pleadings. Vernon v. Iowa State Traveling Men's Assn., 158 Iowa 597, 607, 138 N.W. 696; Emeny Auto Co. v. Neiderhauser, 175 Iowa 219, 223, 157 N.W. 143; Redfern v. Redfern, 212 Iowa 454, 457, 236 N.W. 399; Granteer v. Thompson, 203 Iowa 127, 132, 208 N.W. 497. We have further held that issues made by the pleadings must not be broadened or changed by the instructions, whatever the scope of the evidence. Balik v. Flacker, 212 Iowa 1381, 1384, 238 N.W. 467.

II. The majority finds no error in the court's Instruction No. 7 on lookout. It was correct, clear and proper. The court in that instruction told the jury: "The burden is upon the plaintiff-administratrix to prove by a preponderance of the evidence that the defendant Dishman operated the Chevrolet truck in proceeding upon First Avenue southeast without exercising reasonable care and caution under the surrounding circumstances, in so far as shown by the evidence, in the matter of keeping a lookout for others who might be traveling upon the

738

highway in question and in particular for the automobile driven by Clara Kuehn and in which the decedent Betty Jane Kuehn was riding; and if you find that the plaintiff has met such burden, then you should find the defendants negligent in the respect charged by the plaintiff; otherwise not."

It was Dishman's testimony that he failed to look to his left that caused defendants their greatest concern. He stated: "As I came down the intersection I was looking straight ahead. I glanced off to the side. Then I *turned* my head to the North—didn't see nothing coming; looked straight ahead again; collision. * * * I had turned my head and looked to the North, to my right." He never once said he looked to his left, but did say as he approached the intersection, "I didn't see any traffic moving on it [the street] at that time. I didn't see any traffic approaching the intersection from the South before I looked North. * * * I first saw the Kuehn car *after* the collision." (Emphasis supplied.)

While the evidence as to the issues of right-hand driving and speed was sharply in dispute, Dishman's admission that he maintained no reasonable and proper lookout to his left posed a serious obstacle for defendants to overcome. Thus counsel endeavored to get a favorable instruction as to lookout, and to avoid a finding of negligence in that regard as a matter of law. It was clearly not his desire to obtain a simple instruction as to directional right of way. If such had been asked, it certainly would have been given, but under these circumstances the failure to give it should never be held prejudicial error. Defendants were more to blame than the able trial court for that failure.

III. The majority states that "the court somewhat aggravated its failure [to give an instruction on directional right of way] by telling the jury, in its Instruction No. 11, that 'you are instructed that the said Clara Kuehn was under the same legal duty to exercise the same standard of care and caution as was required of the defendant Dishman, and that the said Clara Kuehn was duty bound to observe the provisions of law in regard to the operation of motor vehicles in so far as such provisions were applicable to them or each of them.'" I find no error

in that statement. In fact, it says plainly that Clara Kuehn, the third party involved in the accident, was bound to observe the provisions of law regarding motor vehicles, which would include the section the majority is so concerned about, section 321.319, Code, 1958. Certainly most jurors today are drivers of motor vehicles and know or are presumed to know the requirements of that section of the motor-vehicle law. However, the purpose of Instruction No. 11 was to tell the jury that there was a way by which defendants could escape all liability for the injury and death of Betty. Although criticism of a single sentence from that instruction is unfair to the court, it points out my contention that if defendants wanted a *refined instruction* as to the provisions of a certain section of the motor-vehicle law, it should have and would have asked for it.

On the other hand, Instruction No. 11 as given by the court seems to me to unnecessarily stress by repetition the burden on plaintiff to show Clara's negligence, if any, was not the sole proximate cause of this accident. Instruction No. 11 in its entirety provided:

"It is undisputed in the evidence that the said Betty Jane Kuehn was riding in a car driven by Clara Kuehn at the time and place of the collision in question. You are instructed that the negligence of the said Clara Kuehn, if any there was, would bar the plaintiff-administratrix's recovery in this case if the negligence of the said Clara Kuehn, if any, was the sole proximate cause of the plaintiff's decedent's injuries and death. That is, if the negligence of the said Clara Kuehn, if any there was, alone was the proximate cause of the plaintiff's decedent's injuries and death, as distinguished from being a mere contributing or concurring cause.

"In connection with whether the said Clara Kuehn was negligent and as to whether or not her negligence, if any, was the sole proximate cause of the injuries and death of the plaintiff's decedent rather than a mere contributing or concurring cause, you are instructed that the said Clara Kuehn was under the same legal duty to exercise the same standard of care and caution as was required of the defendant Dishman, and that the

said Clara Kuehn was duty bound to observe the provisions of the law in regard to the operation of motor vehicles in so far as such provisions were applicable to them or each of them.

. "If you find from all the evidence that the said Clara Kuehn was negligent in the operation of the motor vehicle in which the said Betty Jane Kuehn was riding, and if such negligence of the said Clara Kuehn was the sole proximate cause and not a mere concurring or contributing cause of the injuries and death of the plaintiff's decedent, then the plaintiff-administratrix would not be entitled to recover and your verdict should be for the defendant."

Could any reasonably intelligent juror fail to understand that instruction? It was, if anything, most favorable to the defendants.

The majority concedes that defendants failed to claim that any negligence of Clara Kuehn was imported to the decedent, but it insists that defendants had a right to show, if they could, that the negligence of Clara Kuehn was the sole proximate cause of the collision. That is the law. Instruction No. 11 made that right very clear to the jury, but nevertheless the jury in both cases found Clara Kuehn was not even contributorily negligent, to say nothing of being solely responsible for the accident. After a careful examination of the record, I think it is a shallow claim indeed, and one upon which there was no substantial evidence, that Clara's negligence, if any, was the sole proximate cause of this collision and decedent's fatal injury.

The plaintiff carried her burden of proof as to the negligence of defendant Dishman, which was almost conclusive of defendant's failure to keep a proper lookout. The evidence is very persuasive that, even had Clara been negligent, the proximate cause, or at least a concurring proximate cause of the injury and death, was the negligence of the defendant Dishman. It was not claimed that the burden was on Dishman to show a third party was the sole cause, and Instruction No. 11 does not so place the burden. Thus, the authorities cited in Division VIII of the majority opinion are not in point or of controlling importance. This is admitted in Division IX when it referred to court's Instructions Nos. 11 and 12. At any rate it is clear to

me that the learned trial court did not ignore or refuse to give a refined or proper instruction on directional right of way, and a reversal should not be granted on that basis.

IV. The majority in Division X dealt with the issue which I feel was paramount in the minds of defendants by their Requested Instruction No. 4 and their exceptions made to the court's instructions. This issue as to lookout to one's left, not the issue of sole proximate cause, was defendants' principal concern.

I am not satisfied that the directional right-of-way statute places upon a driver a greater duty to keep a lookout to his right than to his left. I am not in accord with the statement that we have so held or that the cases cited by the majority so hold. If they do so hold, I think there is no justification for such decision. The majority admits the standard of care is the same for both parties on their approach to an intersection. They must look both ways and see that which was clearly visible. We have never said one who fails to look to his left is not guilty of negligence, as the majority seems to infer, even in Roe v. Kurtz, 203 Iowa 906, 907–910, 210 N.W. 550; Hutchins v. LaBarre, 242 Iowa 515, 533, 47 N.W.2d 269, 279, 280. I seriously question the holding that if one is guilty as a matter of law for not looking to his right, he may not be so held in failing to look to his left as he approaches an intersection. There is no safety, reason or logic in such a distinction. If based upon a statutory duty to do something affirmative and he fails to perform that duty, we have a different situation independent of lookout, that of statutory violation, which I feel was the basis of those decisions cited. I cannot subscribe to the holding that as to the obligation to keep a proper lookout, there is a greater duty to look to the right than to the left.

If a statute creates another duty which may require an additional standard of care at an intersection, it seems to me that requirement may create a situation lending itself to the doctrine requiring counsel to submit a proper instruction pointing out specifically the application of that standard of care which he claims appropriate under the circumstances. This defendants failed to do.

If I understand correctly the rule advanced by the majority, there can be no legal action as a result of a collision within the extended lines of a street intersection that will not require the trial court to give an instruction on directional right of way. To further predicate reversible error on its failure to do so, in my opinion, is not good law, for as here an extended and costly proceeding is set aside on a very questionable technicality, and no decision is rendered on the obvious merits of the case. It is my thought that, taken as a whole, the court's instructions were adequate and that the jury understood the issues and correctly decided them. I would affirm the judgment of the trial court.

HAYS, PETERSON and GARRETT, JJ., join in this dissent.